# Exhibit A

Filed
D.C. Superior Court
03/07/2017 14:43PM
Clerk of the Court

**IN THE SUPERIOR COURT**
**FOR THE DISTRICT OF COLUMBIA**

DJB HOLDINGS LLC, 5335 Wisconsin
Avenue, NW, Suite 501, Washington, D.C.
20015,

               Plaintiff,

    v.

DARWIN NATIONAL ASSURANCE
COMPANY, 1690 New Britain Avenue,
Suite 101, Farmington, CT 06032,

               Defendant.

Case No. _2017 CA 001510 B_

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, DJB HOLDINGS LLC ("DJB Holdings") sues Defendant, DARWIN

NATIONAL ASSURANCE COMPANY ("Darwin"), and in support thereof states as follows:

### I.  NATURE OF THE ACTION

1.    This is an action for breach of contract under a Directors and Officers ("D&O")

insurance policy (the "Policy") issued by Darwin to DJB Holdings.  As set out in more detail

below, the Policy requires Darwin to defend and indemnify DJB Holdings against claims

covered by the Policy.

2.    DJB Holdings is an online retail company; among other things, it sells clothing

and similar merchandise to customers via its website.

3.    DJB Holdings purchased the Policy to insure itself against the risk that claims

would be brought against it, or its directors or officers, by third parties.  However, when U.S.

government agencies asserted securities claims against DJB Holdings—claims that DJB

Holdings vigorously contests—Darwin refused to honor its obligations under the Policy, instead

raising unsupportable coverage defenses and generally acting in a way inconsistent with its duties to DJB Holdings under the Policy.

4.     DJB Holdings has been harmed by Darwin's actions; it has been forced to fund its defense itself, in the amount of more than $1 million.

## II.  THE PARTIES

5.     DJB Holdings is incorporated under the laws of the State of Delaware.  Its principal place of business is in the District of Columbia.

6.     Darwin is an insurance company incorporated under the laws of the State of Delaware.  Its principal place of business is in Farmington, Connecticut.  Darwin is engaged, *inter alia*, in the business of providing D&O insurance to companies and individuals.

## III.  VENUE AND JURISDICTION

7.     This Court has personal jurisdiction over Darwin under D.C. Code § 13-423(a)(1) and (a)(6), and subject matter jurisdiction over this action under D.C. Code § 11-921(a).

8.     Venue is proper in this Court because a substantial part of the events giving rise to the claim occurred in this judicial district and because Darwin is subject to personal jurisdiction in this district.

## IV.  FACTUAL BACKGROUND

**The Darwin Policy**

9.     Darwin issues insurance policies that provide coverage for directors and officers of companies, as well as the companies themselves; such policies are commonly known as "D&O" or "management liability" policies.

10.    Darwin issued D&O policy number 0309-6091 to DJB Holdings, covering the period May 22, 2015 to May 22, 2016.  A copy of the Policy is attached hereto as Exhibit A.

11.     The Policy covers claims asserted during the policy period against DJB Holdings, as well as its directors and officers (collectively, the "Insureds").  The Policy also requires Darwin to defend claims asserted against the Insureds.

12.     The Policy covers claims arising from an actual or alleged "Wrongful Act", which is broadly defined (with respect to claims against individuals) as "any actual or alleged act, error, omission, neglect, breach of duty, breach of trust, misstatement, or misleading statement by an Insured Person in his or her capacity as such."  With respect to claims against DJB Holdings, "Wrongful Act" is defined as "any actual or alleged act, error, omission, neglect, breach of duty, misstatement or misleading statement by [DJB Holdings]."

**The Claims**

13.     During the period of the Policy, DJB Holdings received a series of letters from FINRA demanding information from DJB Holdings.  Ultimately, FINRA stated in correspondence to counsel for DJB Holdings that FINRA had made a preliminary determination to recommend disciplinary action against Dawn Bennett, one of the principals in DJB Holdings, who is an Insured under the Policy.

14.     In January 2016, DJB Holdings received a letter and subpoena from the United States Securities and Exchange Commission (the "SEC") requesting records or information and noted noted that the subpoena was issued pursuant to a formal order of investigation entered by the SEC on January 6, 2016, captioned *In the Matter of DJB Holdings, LLC* (PI982).

15.     The SEC is proceeding with claims against DJB Holdings and Ms. Bennett in the above-referenced matter; that matter remains pending and is being vigorously defended by DJB Holdings and Ms. Bennett, who deny any wrongdoing.

16.     Both the FINRA matter and the SEC matter constitute a "Claim" as that term is defined in the Policy, and they accordingly trigger coverage under the Policy, including the duty to defend.

**DARWIN's Response to the FINRA and SEC Claims**

17.     DJB Holdings tendered the FINRA and SEC matters to Darwin pursuant to the terms of the Policy.  In response, Darwin asserted a number of supposed defenses to coverage, none of which has any merit, and forced the Insureds to defend themselves at their own expense.

18.     Among other things, Darwin asserted that it has no duty to defend or indemnify the Insureds because of an alleged misstatement in the application for the Policy that was submitted by DJB Holdings.  One of the questions in the application asked:  "Has any Claim been made or legal proceeding brought against any person or entity for whom coverage is sought under the proposed insurance?"  In response, DJB Holdings truthfully and correctly answered "no" because, as of the date the application was submitted, no Claim had been made or legal proceeding brought against DJB Holdings or any of the individuals who would be covered under the Policy.

19.     Darwin asserts that DJB Holdings or Ms. Bennett should have disclosed an SEC investigation that had been brought against another company run by Ms. Bennett (Bennett Group Financial Services), but that proceeding the time was neither against DJB Holdings nor against Ms. Bennett individually.  As such, the answer to the question in the application was completely accurate, and Darwin's position therefore lacks any good faith basis.

20.     Darwin has also reserved its rights on and/or asserted other coverage defenses, but none of those defenses has any merit; in any event, the FINRA and SEC matters trigger Darwin's duty to defend under the Policy and the $1 million Policy limit has been exhausted by the payment of covered defense costs.

## COUNT I -- BREACH OF CONTRACT

21.     DJB Holdings incorporates paragraphs 1-20 as if fully set forth herein.

22.     The FINRA and SEC matters are covered Claims under the Policy.

23.     The FINRA and SEC matters triggered Darwin's duty to defend under the Policy.

24.     Darwin has failed to provide a defense of the FINRA and SEC matters, in breach of its duties under the Policy.

25.     The $1 million limit of the Policy has been exhausted by the payment of defense costs by the Insureds in connection with the FINRA and SEC matters.

26.     By denying coverage for the FINRA and SEC matters, as well as failing to provide a defense, Darwin has breached its duties under the Policy.

27.     The Insureds have satisfied the terms and conditions of the Policy, and accordingly is entitled to coverage under the Policy.

28.     Darwin's breaches of the Policy have caused substantial damages to the Insureds in an amount in excess of $1 million.

WHEREFORE, DJB Holdings is entitled to damages in an amount to be determined at trial, and respectfully requests that the Court award its costs, attorneys' fees, and such other relief and amounts as the Court deems appropriate.


## DEMAND FOR JURY TRIAL

Pursuant to D.C. Superior Court Rule 38, Plaintiff hereby demands trial by jury of any issue so triable.

Date:  March 7, 2017                          /s/ *Richard D. Milone*

Richard D. Milone (D.C. Bar No. 440834)
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
T: (202) 879-7645
F: (202) 626-1700
rmilone@jonesday.com

*Counsel for Plaintiff*
*DJB Holdings LLC*

# EXHIBIT A



**LVL Claims Services, LLC**

199 Water Street, 29th Floor
New York, New York 10038

Main: 212.359.3950
Fax: 212.513.7589
www.lvlclaims.com

January 28, 2016

**Via Electronic Mail:** bmascho@djbennett.com

Brad Mascho
DJB Holdings, LLC
5335 Wisconsin Ave, NW #501
Washington, DC 20015

RE:

| | |
|---|---|
| Insured: | DJB Holdings, LLC |
| Matter: | FINRA Investigation |
| Carrier: | Darwin National Assurance Company |
| Claim Number: | 2016001881 |
| Policy Number: | 0309-6091 |

Dear Mr. Mascho:

We are working with Darwin National Assurance Company on the matter reported by Mr. Mark Baldwin's correspondence dated January 26, 2016.   Kindly note the claim number that has been assigned.

This matter will be handled by Karen Thompson-David who will review the information you have provided and forward a preliminary coverage evaluation to your shortly.   In the interim, we consider all rights under the Policy and at law mutually reserved.   Also, if you have any questions, comments, or concerns Karen Thompson-David's direct telephone line is 212-359-3946.   Please feel free to contact her.

Customer service is important to us.   If you have any servicing issues regarding any aspect of how we are handling your claims, please let us know.   We look forward to working with you toward a successful resolution of this matter.

Sincerely,

*Deirdre May*

Deirdre May
Operations Analyst

Cc:    Mark Baldwin, Insurance House (via e-mail mbaldwin@insurancehouse.com)
       Karen Thompson-David, LVL Claims Services (via e-mail kthompson-david@lvlclaims.com)



**DARWIN NATIONAL ASSURANCE COMPANY**
(A member company of Allied World Assurance Company Holdings Ltd.)
1690 New Britain Ave., Suite 101, Farmington, CT 06032 Tel. (860) 284-1300 Fax (860) 284-1301

# FORCEFIELD℠

## PRIVATE COMPANY
### MANAGEMENT LIABILITY PACKAGE POLICY

POLICY NUMBER: 0309-6091          RENEWAL OF:

### NOTICES

THE FOLLOWING NOTICES ARE APPLICABLE TO ALL COVERAGE SECTIONS, EXCEPT THE CRIME AND THE KIDNAP AND RANSOM/EXTORTION COVERAGE SECTIONS.

EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN.

THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR DEFENSE COSTS. AMOUNTS INCURRED FOR DEFENSE COSTS SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.

THE INSURER DOES NOT ASSUME THE DUTY TO DEFEND ANY CLAIM UNDER THIS POLICY; HOWEVER, IF THE INSURED TENDERS THE DEFENSE OF ANY CLAIM TO THE INSURER IN ACCORDANCE WITH THE TERMS HEREIN, THE INSURER SHALL ASSUME THE DEFENSE OF SUCH CLAIM.

*PLEASE READ THE ENTIRE POLICY CAREFULLY AND DISCUSS THE COVERAGE HEREUNDER WITH YOUR INSURANCE BROKER.*

## DECLARATIONS

ITEM 1.   **NAMED INSURED**: DJB Holdings LLC

   **ADDRESS:**   5335 Wisconsin Avenue, Suite 501 NW
   Washington, DC 20015

ITEM 2.   **POLICY PERIOD:**   Inception Date: May 22, 2015    Expiration Date: May 22, 2016
   (12:01 a.m. Standard Time at the address stated in Item 1)

## ITEM 3.  COVERAGE SECTIONS AND PREMIUM

This Policy provides coverage under a Coverage Section only if purchased by the **Insured** and indicated by an "X" below.

| Liability Coverage Section | Premium |
|---|---|
| ☒ Directors and Officers Liability Coverage Section | $2,315 |
| ☒ Employment Practices Liability Coverage Section | $2,751 |
| ☐ Fiduciary Liability Coverage Section | N/A |
| ☐ Employed Lawyers Coverage Section | N/A |
| ☐ Crime Coverage Section | N/A |
| ☐ Kidnap and Ransom/Extortion Coverage Section | N/A |
| **Total Policy Premium** | **$5,066** |

## ITEM 4.   LIMITS OF LIABILITY AND RETENTIONS OR DEDUCTIBLES

### A.  LIMIT OF LIABILITY AND RETENTION FOR EACH COVERAGE SECTION
(Other than the Crime and Kidnap and Ransom/Extortion Coverage Sections.)

| Coverage Section | Separate Limit of Liability | Shared Limit of Liability | Retention* |
|---|---|---|---|
| Directors and Officers Liability Coverage Section | | $1,000,000 <br> Shared With: EPL | All Claims: $15,000 |
| Employment Practices Liability Coverage Section | | $1,000,000 <br> Shared With: D&O | All Claims: $20,000 |
| Third Party Liability Coverage Sublimit of Liability | | Included | |
| Fiduciary Liability Coverage Section | N/A | N/A <br> Shared With: N/A | All Claims: N/A |
| Employed Lawyers Coverage Section | N/A | N/A <br> Shared With: N/A | All Claims: N/A |

*With respect to all Coverage Sections listed above, no Retention amount is applicable to Non-Indemnifiable Loss.*

### B.  AGGREGATE LIMIT OF LIABILITY

$1,000,000

*The Aggregate Limit of Liability set forth above is the maximum Limit of Liability of the Insurer for all Loss for which coverage is provided under all Coverage Sections listed in Item 4.A. above.  This Aggregate Limit of Liability does not apply to the Crime and Kidnap and Ransom/Extortion Coverage Sections.*

### C.  LIMITS OF LIABILITY AND DEDUCTIBLES FOR CRIME COVERAGE SECTION

| Insuring Agreement | Limit of Liability for a Single Loss | Deductible, each Single Loss |
|---|---|---|
| Insuring Agreement A "Employee Theft" Coverage | N/A | N/A |
| Insuring Agreement B "Forgery or Alteration" Coverage | N/A | N/A |
| Insuring Agreement C "Inside the Premises" Coverage | N/A | N/A |
| Insuring Agreement D "In Transit" Coverage | N/A | N/A |
| Insuring Agreement E "Computer Fraud" Coverage | N/A | N/A |

| Insuring Agreement F "Funds Transfer Fraud" Coverage | N/A | N/A |
|---|---|---|
| Insuring Agreement G "Money Orders and Counterfeit Currency Fraud" Coverage | N/A | N/A |
| Insuring Agreement H "Credit Card Fraud" Coverage | N/A | N/A |

**D.  CRIME COVERAGE SECTION AGGREGATE LIMIT OF LIABILITY**

| N/A |
|---|

*This Aggregate Limit of Liability set forth above is the maximum Limit of Liability of the Insurer for all loss for which coverage is provided under the Crime Coverage Section.*

**E.  LIMITS OF INSURANCE AND RETENTIONS FOR KIDNAP AND RANSOM/EXTORTION COVERAGE SECTION**

| Insuring Agreement | Limit of Insurance, Per Insured Event | Annual Aggregate Limit of Insurance | Retention, Per Insured Event |
|---|---|---|---|
| Insuring Agreement A "Kidnap and Ransom/Extortion" | N/A | N/A | N/A |
| Insuring Agreement B "In-Transit/Custody" | N/A | N/A | N/A |
| Insuring Agreement C "Expenses" | N/A | N/A | N/A |
| Insuring Agreement D "Personal Loss" | N/A Per Insured Person; N/A Per Insured Event | N/A | N/A |
| Insuring Agreement E "Legal Costs" | N/A | N/A | N/A |

**F.  OTHER COVERAGE LIMITS AND SUBLIMITS**

| Coverage | Limit of Liability |
|---|---|
| Dedicated Excess Coverage for Insured Persons (D&O) | $250,000 |
|  |  |
| Sublimit of Liability for: |  |
|     Derivative Demand Coverage (D&O) | $150,000 |
|     Strategic Response Costs Coverage (D&O) | $25,000 |
|     Voluntary Compliance Program Coverage (Fiduciary) | N/A |
|     HIPAA Claim Coverage (Fiduciary) | N/A |
|     Restoration Expenses (Crime) | N/A |
|     Authentication Expenses (Crime) | N/A |
|  |  |
| Punitive Damages Coverage Options for D&O and EPL Coverage Sections: ☐ D&O Punitive Damages Sublimit of Liability: ☐ EPL Punitive Damages Sublimit of Liability: ☐ Shared Punitive Damages Sublimit of Liability for D&O and EPL ☒ No Punitive Damages Sublimit of Liability for D&O or EPL* |  |

*\* With respect to Punitive Damages Coverage, if "No Punitive Damages Sublimit of Liability for D&O or EPL" is selected above, the Limit of Liability for Punitive Damages shall be equal to either the D&O or the EPL Coverage Section Limit of Liability, as applicable, set forth above in Item 4.A.*

**ITEM 5.   COVERAGE DATES**

| Coverage Section | Date |
|---|---|
| Directors and Officers Liability Coverage Section | Pending or Prior Date: May 22, 2015 |
| Employment Practices Liability Coverage Section | Pending or Prior Date: May 22, 2015 |
| Fiduciary Liability Coverage Section | Pending or Prior Date: N/A |
| Employed Lawyers Liability Coverage Section | Pending or Prior Date: |
| Crime Coverage Section | N/A |
| Kidnap and Ransom/Extortion Coverage Section | N/A |

**ITEM 6.   DISCOVERY PERIOD**

| | |
|---|---|
| 1 Year: | **100%** |
| 2 Years: | **125%** |
| 3 Years: | **150%** |
| 4 Years: | **TBD** |
| 5 Years: | **TBD** |
| 6 Years: | **TBD** |

**ITEM 7.   ADDRESS OF INSURER FOR NOTICES UNDER THIS POLICY**

**A.  Claim-Related Notices:**
**DARWIN NATIONAL ASSURANCE COMPANY**
**ATTN: CLAIMS DEPARTMENT**
**1690 New Britain Ave., Suite 101**
**Farmington, CT 06032**
**or**
**noticeofloss@darwinpro.com**

**B.  All Other Notices:**
**DARWIN NATIONAL ASSURANCE COMPANY**
**ATTN: PROFESSIONAL LIABILITY UNDERWRITING**
**199 WATER STREET**
**NEW YORK, NY 10038**

In Witness Whereof, the **Insurer** has caused this Policy to be executed and attested. This Policy shall not be valid unless countersigned by a duly authorized representative of the **Insurer**.

President                               Secretary

AUTHORIZED REPRESENTATIVE

Directors & Officers Liability ☒
Employed Lawyers Liability ☐
Employment Practices Liability ☒
Fiduciary Liability ☐

## ENDORSEMENT NO. 1

## DISTRICT OF COLUMBIA AMENDATORY ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on May 22, 2015, forms part of

| Policy No. | 0309-6091 |
| Issued to | DJB Holdings LLC |
| Issued by | Darwin National Assurance Company |

To be attached to and form a part of all Management Liability Insurance Policies written in the District of Columbia.

This endorsement modifies insurance coverage provided under the FORCEFIELD PRIVATE COMPANY MANAGEMENT LIABILITY PACKAGE POLICY.

In consideration of the premium charged, in connection with the Coverage Section(s) selected above, it is hereby agreed that:

A.     Section IX. CANCELLATION AND NON RENEWAL of the General Terms and Conditions, Subsections B. and D. are deleted in their entirety and replaced by the following:

"B.     This Policy, or any individual Coverage Section, shall not be cancelled by the **Insurer** except by reason of non-payment of premium by the **Insured**. The **Insurer** may cancel the Policy by delivering or mailing to the **Named Insured**, by registered mail or by courier, at the address set forth in Item 1. of the Declarations, written notice stating when, not less than thirty (30) days thereafter, cancellation shall be effective. At least five (5) days before sending notice to the **Named Insured**, the **Insurer** will notify the agent or broker of record, of the cancellation. The mailing of such notice as aforesaid shall be sufficient proof of notice. In the event of such cancellation, the Policy will be deemed terminated as of the date indicated in the **Insurer's** written notice of cancellation to the **Named Insured**."

"D.     The **Insurer** shall have no obligation to renew this Policy or any individual Coverage Section. In the event the **Insurer** decides to non-renew this Policy or any individual Coverage Section, it shall deliver or mail to the **Named Insured**, at the address set forth in Item 1. of the Declarations, written notice of such decision at least sixty (60) days prior to the expiration of the **Policy Period**. At least five (5) days before sending notice to the **Named Insured**, the **Insurer** will notify the agent or broker of record, of the nonrenewal."

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

PP 00028 08 (01/10)

Directors & Officers Liability ☒
Employed Lawyers Liability ☐
Employment Practices Liability ☐
Fiduciary Liability ☐

## ENDORSEMENT NO. 2

### BROAD PROFESSIONAL SERVICES EXCLUSION
### SECURITIES CARVEBACK

This Endorsement, effective at 12:01 a.m. on May 22, 2015, forms part of

| | |
|---|---|
| Policy No. | 0309-6091 |
| Issued to | DJB Holdings LLC |
| Issued by | Darwin National Assurance Company |

In consideration of the premium charged, in connection with the Coverage Section(s) selected above, it is hereby agreed that:

No coverage will be available for **Loss** from any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty in connection with the rendering of, or failure to render, services to a third party, whether or not a fee for such services has been paid;

provided however, that this Exclusion shall not apply to any **Securities Claim**, but only if such **Securities Claim is** brought and maintained independent of, and without the solicitation, assistance, participation or intervention of, the **Company** or any **Insured Person**.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

Page 1 of 1

Directors & Officers Liability ☒
Employed Lawyers Liability ☐
Employment Practices Liability ☒
Fiduciary Liability ☐

## ENDORSEMENT NO. 3

### SPECIFIC ENTITY EXCLUSION
### CLAIMS BROUGHT BY OR AGAINST

This Endorsement, effective at 12:01 a.m. on May 22, 2015, forms part of

| | |
|---|---|
| Policy No. | 0309-6091 |
| Issued to | DJB Holdings LLC |
| Issued by | Darwin National Assurance Company |

In consideration of the premium charged, in connection with the Coverage Section(s) selected above, it is hereby agreed that:

No entity listed below is an **Insured**:

| |
|---|
| They're Just Kids Foundation |
| Bennett Group Financial Services |

Accordingly, no coverage will be available for **Loss** in connection with any **Claim**:

(1)     brought by or on behalf of any above-listed entity or any subsidiary, trustee, receiver, assignee, director, officer, shareholder or beneficiary of such entity; or

(2)     brought against any above-listed entity, or any related or affiliated entities or individuals associated therewith, including but not limited to any subsidiary, trustee, receiver, assignee, director, officer, shareholder or beneficiary of such entity.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

Page 1 of 1

**ENDORSEMENT NO. 4**

**OFAC EXCLUSION**

This Endorsement, effective at 12:01 a.m. on May 22, 2015, forms part of

   Policy No.  0309-6091
   Issued to   DJB Holdings LLC
   Issued by   Darwin National Assurance Company

It is understood and agreed that the EXCLUSIONS section of all purchased Coverage Sections is amended by adding the following exclusion:

This Policy shall not cover any **Loss** in connection with any **Claim** in the event that such coverage would not be in compliance with any United States of America economic or trade sanctions, laws or regulations, including but not limited to the U.S. Treasury Department's Office of Foreign Assets Control, or any similar foreign, federal, state or statutory law or common law.

All other terms, conditions and limitations of this Policy shall remain unchanged.

                  _____
                     Authorized Representative

Directors & Officers Liability ☒
Employed Lawyers Liability ☐
Employment Practices Liability ☐
Fiduciary Liability ☐

## ENDORSEMENT NO. 5

### PRE-APPROVED CRISIS MANAGEMENT FIRM

This Endorsement, effective at 12:01 a.m. on May 22, 2015, forms part of

| | |
|---|---|
| Policy No. | 0309-6091 |
| Issued to | DJB Holdings LLC |
| Issued by | Darwin National Assurance Company |

In consideration of the premium charged, in connection with the Coverage Section(s) selected above, it is hereby agreed that the following crisis management firms shall be deemed approved in advance by the **Insurer** pursuant to Section II.D. of the Coverage Section:

| Crisis Management Firm and Address | Contact Information |
|---|---|
| **Abernathy MacGregor Group** | |
| Los Angeles<br>707 Wilshire Boulevard<br>Suite 3950<br>Los Angeles, CA 90017<br>www.abmac.com | Ian Campbell<br>Managing Director<br>Office: 213-630-6550<br>x213-630-6550<br>Cell: 213-422-7958<br>Home: 818-957-5650<br>Office Fax: 213-489-3443<br>Home Fax: 818-541-0954<br>Email: idc@abmac.com |
| New York Office<br>501 Madison Avenue<br>New York, NY 10022<br>www.abmac.com | Mike Pascale<br>Managing Director<br>Office: 212-371-5999<br>x212-371-5999<br>Cell: 917-860-2048<br>Home: 914-472-0810<br>Office Fax: 212-752-0723<br>Home Fax: 914-472-0559<br>Email: mmp@abmac.com |
| | Jim MacGregor<br>Vice Chairman<br>Office: 212-371-5999<br>x212-371-5999<br>Cell: 646-236-3271<br>Home: 212-343-0818<br>Office Fax: 212-752-0723<br>Home Fax: 646-613-7033<br>Email: jtm@abmac.com |
| | Rhonda Barnat |

| | |
|---|---|
| | Managing Director<br>Office: 212-371-5999<br> x212-371-5999<br>Cell: 917-912-6378<br>Home: 646-478-8740<br>Office Fax: 212-752-0723<br>Email: rb@abmac.com |
| **Singer Associates** | |
| | Adam Alberti<br>Executive Vice President<br>Office: 415-227-9700<br> x415-227-9700<br>Cell: 415-225-2443<br>Home: 650-620-9120<br>Email: adam@singersf.com |
| | Sam Singer<br>President<br>Office: 415-227-9700<br> x415-227-9700<br>Cell: 415-336-4949<br>Home: 510-644-3636<br>Email: singer@singersf.com |
| | Jason Barnett<br>Vice President<br>Office: 415-227-9700<br> x415-227-9700<br>Cell: 415-999-0917<br>Home: 415-644-0800<br>Email: barnett@singersf.com |
| | Charles Goodyear<br>Senior Account Supervisor<br>Office: 415-227-9700<br> x415-227-9700<br>Cell: 415-637-8671<br>Home: 415-409-6909<br>Email: charlie@singersf.com |
| | Courtney Lodato<br>Vice President<br>Office: 415-227-9700<br> x415-227-9700<br>Cell: 415-378-4382<br>Home: 650-931-4694<br>Email: courtney@singersf.com |
| **Zeno** | |
| New York City<br>200 Park Avenue South<br>Suite 1603<br>New York, NY 10003 | Ame Wadler<br>Managing Director, Health<br>Office: 212-299-3961<br> x212-299-3961<br>Cell: 201-486-1926<br>Email: ame.wadler@zenogroup.com |

| | |
|---|---|
| Washington DC<br>3222 N Street, NW<br>Suite 500<br>Washington, DC 20007 | Mark Shadle<br>Managing Director, Corporate Affairs<br>Office: 312-396-9744<br>x312-396-9744<br>Cell: 630-373-4046<br>Email: mark.shadle@zenogroup.com |

The foregoing approval, and the **Insurer's** obligation to reimburse the **Named Insured** for **Crisis Management Expenses** paid to such firm pursuant to this Endorsement, is expressly conditioned on the following:

(a) The **Insurer** shall be reasonably satisfied that such firm is able and competent to provide those services outlined in Section II.D. of the Coverage Section;

(b) The **Insurer** shall pay such firm at an hourly or otherwise agreed upon rate which is equivalent to the rate that the **Insurer** customarily pays for such firms in the same, or in a comparable, geographic location, and fees of such firm in excess of the hourly or otherwise agreed upon rate customarily paid by the **Insurer** shall be uninsured; and

(c) Such firm shall in all respects adhere to any guidelines issued by the **Insurer** and updated from time to time.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

Directors & Officers Liability ☒
Employed Lawyers Liability ☐
Employment Practices Liability ☒
Fiduciary Liability ☐

## ENDORSEMENT NO. 6

## DUTY TO DEFEND COVERAGE

This Endorsement, effective at 12:01 a.m. on May 22, 2015, forms part of

| | |
|---|---|
| Policy No. | 0309-6091 |
| Issued to | DJB Holdings LLC |
| Issued by | Darwin National Assurance Company |

In consideration of the premium charged, in connection with the Coverage Sections(s) selected above, it is hereby agreed that Section V. of such Coverage Section is deleted in its entirety and replaced with the following:

**"V.     DEFENSE AND SETTLEMENT OF A CLAIM**

A.     As part of and subject to the applicable Limit of Liability set forth in Item 4. of the Declarations, the **Insurer** will have the right and duty to defend any **Claim** which is covered in whole or in part under the Insuring Agreements, even if such **Claim** is groundless, false or fraudulent.

B.     In connection with the defense of any **Claim**, as long as there are allegations asserted which are within the coverage afforded by this Coverage Section, the **Insurer** will not allocate any portion of **Defense Costs** to the **Insured** even if there are allegations which are outside of the coverage afforded by this Coverage Section.

C.     From the date the **Claim** is first made against an **Insured** to the date when the **Insurer** takes on the defense of such **Claim**, the **Insureds** shall take no action, or fail to take any required action, that prejudices the rights of any **Insured** or the **Insurer** with respect to such **Claim**.

D.     The **Insured** shall have the right to effectively associate with the **Insurer** in the defense and the negotiation of any settlement of the **Claim**, subject to the provisions of this Section V.  However, no **Insured** may incur any **Defense Costs** or admit liability for, or settle, or offer to settle, any **Claim** without the **Insurer's** written consent.

E.     The **Insurer** shall have the right to investigate and conduct negotiations and, with the **Insured's** consent, which shall not be unreasonably withheld, enter into the settlement of any **Claim** that the **Insurer** deems appropriate.  If the **Insured** refuses to consent to a settlement acceptable to the claimant in accordance with the **Insurer's** recommendation, then, subject to the **Insurer's** applicable Limit of Liability set forth in Item 4. of the Declarations, the **Insurer's** liability for such **Claim** will not exceed:

(a)     the amount for which such **Claim** could have been settled by the **Insurer** plus **Defense Costs** up to the date the **Insured** refused to settle such **Claim**; plus

(b)      80% of any **Loss** in excess of the amount in clause (a) above, incurred in connection with such **Claim**. The remaining **Loss** will be carried by the **Insured** at its own risk and will be uninsured.

F.      The **Insurer** shall pay **Defense Costs** excess of the applicable Retention, subject to all other terms and conditions of this Policy.  In the event and to the extent that the **Insureds** shall not be entitled to payment of such **Defense Costs** under the terms and conditions of this Coverage Section, such payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds**, severally and according to their respective interests.

G.      The **Insurer** shall not be obligated to defend or continue to defend a **Claim**, or to pay or reimburse **Defense Costs**, after the applicable Limit of Liability has been exhausted.  If the **Insurer's** applicable Limit of Liability set forth in Item 4. of the Declarations is exhausted by the payment of **Loss**, the entire premium will be deemed fully earned.

This Section V. shall not apply to **Crisis Event Coverage**."


All other terms, conditions and limitations of this Policy shall remain unchanged.


_____
Authorized Representative

## ENDORSEMENT NO. 7

## ENDORSEMENT SCHEDULE

This Endorsement, effective at 12:01 a.m. on May 22, 2015, forms part of

| | |
|---|---|
| Policy No. | 0309-6091 |
| Issued to | DJB Holdings LLC |
| Issued by | Darwin National Assurance Company |

It is agreed that, as of the Inception Date set forth in Item 2 of the Declarations, the following Endorsements are attached to, and are made a part of, this Policy:

| | **FORM NUMBER** | **ENDORSEMENT TITLE** |
|---|---|---|
| 1 | PP 00028 08 (01/10) | District of Columbia Amendatory Endorsement |
| 2 | PP 00078 00 (01/10) | Broad Professional Services Exclusion - Securities Carveback |
| 3 | PP 00086 00 (01/10) | Specific Entity Exclusion - Claims Brought By or Against |
| 4 | PP 00132 00 (05/10) | OFAC Exclusion |
| 5 | PP 00133 00 (05/10) | Pre-Approved Crisis Management Firm |
| 6 | PP 00136 00 (06/10) | Duty to Defend Coverage |
| 7 | PP 00152 00 (08/11) | Endorsement Schedule |
| 8 | PP 00161 00 (08/11) | Amend Definition of Executive - Include Committee Members |
| 9 | PP 00174 00 (08/11) | Pollution Exclusion Carveback Non-Indemnifiable Claims |
| 10 | PP 00180 00 (12/12) | Anti-Trust Exclusion - Insured Persons Carveout |
| 11 | PP 00182 00 (01/13) | Amend 'Intellectual Property' Exclusion - Carveback For Securities Claim |
| 12 | PP 00189 00 (01/13) | Broadcasting And Advertising Exclusion - Carveback For Securities Claims And Employee Assistance |
| 13 | MANUSCRIPT | DJ Manu A Product Liability and Defect Exxlusion |
| 14 | MANUSCRIPT | DJ Manu B Amend Contract Exclusion |
| 15 | MANUSCRIPT | DJ Manu C Private Company Policy Amendatory Endorsement |
| 16 | MANUSCRIPT | DJ Manu D IRCA Violation Coverage Sublimit |
| 17 | MANUSCRIPT | DJ Manu E Workplace Violence Coverage Endorsement |

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

Directors & Officers Liability ☒
Employed Lawyers Liability ☐
Employment Practices Liability ☒
Fiduciary Liability ☐

## ENDORSEMENT NO. 8

## AMEND DEFINITION OF EXECUTIVE - INCLUDE COMMITTEE MEMBERS

This Endorsement, effective at 12:01 a.m. on May 22, 2015, forms part of

| | |
|---|---|
| Policy No. | 0309-6091 |
| Issued to | DJB Holdings LLC |
| Issued by | Darwin National Assurance Company |

In consideration of the premium charged, the Coverage Section selected above is amended by adding the following to the Definition of **"Executive"**:

> **"Executive"** also means any past, present or future member of any Executive, Disciplinary, Finance, Membership, Nominating, Long Range Planning or Marketing Committee of the **Company**.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

PP 00161 00 (08/11)                    1

Directors & Officers Liability ☒
Employed Lawyers Liability ☐
Employment Practices Liability ☐
Fiduciary Liability ☐

**ENDORSEMENT NO. 9**

**POLLUTION EXCLUSION
CARVEBACK NON-INDEMNIFIABLE CLAIMS**

This Endorsement, effective at 12:01 a.m. on May 22, 2015, forms part of

Policy No.    0309-6091
Issued to     DJB Holdings LLC
Issued by     Darwin National Assurance Company

In consideration of the premium charged, the Coverage Section selected above is amended by adding the following Exclusion:

This Coverage Section shall not cover any **Loss** in connection with any **Claim** alleging, arising out of, based upon or attributable to any injury, matter, damage, liability, obligation or risk due to, arising from or related to any **Pollutant**. This Exclusion shall apply whether such injury, matter, damage, liability, obligation or risk may arise from any federal, state, provincial, municipal or other local laws, statutes, ordinances, rules, guidance documents, regulations, administrative orders and directives and all amendments thereto, including without limitation any state voluntary cleanup or risk-based corrective action guidance, or any voluntary or contractual undertaking of any legal responsibility or obligation, or any other basis provided however, that this Exclusion shall not apply to Insuring Agreement A.

Solely as respects this Endorsement, the following defined term applies:

**"Pollutant"** means any solid, liquid, gaseous or thermal irritant or contaminant, including without limitation smoke, vapors, soot, fumes, acids, alkalis, chemicals, hazardous substances, petroleum hydrocarbons, low level radioactive waste, electromagnetic fields, microbial matter, legionella pneumophila and any waste materials including without limitation medical, infectious and pathological waste.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

Directors & Officers Liability ☒
Employed Lawyers Liability ☐
Employment Practices Liability ☒
Fiduciary Liability ☐

## ENDORSEMENT NO. 10

## ANTI-TRUST EXCLUSION –
## INSURED PERSONS CARVEOUT

This Endorsement, effective at 12:01 a.m. on May 22, 2015, forms part of

| | |
|---|---|
| Policy No. | 0309-6091 |
| Issued to | DJB Holdings LLC |
| Issued by | Darwin National Assurance Company |

In consideration of the premium charged, the Coverage Section selected above is amended by adding the following to Section III., EXCLUSIONS:

This Coverage Section shall not cover any **Loss** in connection with any **Claim** alleging, arising out of, based upon or attributable to any violation of any law, whether statutory, regulatory or common, as respects any of the following: anti-trust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships; provided, however, that this Exclusion shall not apply to any **Claim** brought against an **Insured Person** under Insuring Agreements A. or B.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**Directors & Officers Liability** ☒
**Employed Lawyers Liability** ☐
**Employment Practices Liability** ☐
**Fiduciary Liability** ☐

### ENDORSEMENT NO. 11

### AMEND 'INTELLECTUAL PROPERTY' EXCLUSION –
### CARVEBACK FOR SECURITIES CLAIM

This Endorsement, effective at 12:01 a.m. on May 22, 2015, forms part of

|  |  |
|---|---|
| Policy No. | 0309-6091 |
| Issued to | DJB Holdings LLC |
| Issued by | Darwin National Assurance Company |

In consideration of the premium charged, the Coverage Section selected above is amended by deleting Exclusion P. in its entirety and replacing it with the following:

P.   alleging, arising out of, based upon, or attributable to, or in consequence of any actual or alleged plagiarism, infringement or violation of any copyright, patent, trademark or service mark or the misappropriation of intellectual property, ideas or trade secrets; provided, however, that this Exclusion shall not apply to a **Securities Claim**.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

PP 00182 00 (01/13)

Directors & Officers Liability ☒
Employed Lawyers Liability ☐
Employment Practices Liability ☐
Fiduciary Liability ☐

## ENDORSEMENT NO. 12

### BROADCASTING AND ADVERTISING EXCLUSION –
### CARVEBACK FOR SECURITIES CLAIMS AND EMPLOYEE ASSISTANCE

This Endorsement, effective at 12:01 a.m. on May 22, 2015, forms part of

| | |
|---|---|
| Policy No. | 0309-6091 |
| Issued to | DJB Holdings LLC |
| Issued by | Darwin National Assurance Company |

In consideration of the premium charged, the Coverage Section selected above is amended by adding the following to Section III., EXCLUSIONS:

This Coverage Section shall not cover any **Loss** in connection with any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving the **Insured's** activities in advertising, broadcasting, telecasting, webcasting, podcasting, cablecasting or publishing over any media, or in researching or producing any material for such activities; provided however, that this Exclusion shall not apply to any **Securities Claim**, but only if such **Securities Claim** is brought and maintained independent of, and without the solicitation, assistance, participation or intervention of any **Insured** other than an **Employee.**

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

PP 00189 00 (01/13)

Directors & Officers Liability ☒
Employed Lawyers Liability ☐
Employment Practices Liability ☐
Fiduciary Liability ☐

## ENDORSEMENT NO. 13

## PRODUCT LIABILITY/DEFECT EXCLUSION –
## CARVEBACK FOR SECURITIES CLAIM

This Endorsement, effective at 12:01 a.m. on May 22, 2015, forms part of

Policy No.       0309-6091
Issued to        DJB Holdings LLC
Issued by        Darwin National Assurance Company

In consideration of the premium charged, it is agreed that the Coverage Section selected above is amended by adding the following Exclusion:

This Coverage Section shall not cover any **Loss** in connection with any **Claim** based upon, arising out of, directly or indirectly resulting from or in consequence of any actual or alleged:

(1) failure of any product to perform in any manner as a result of any defect, deficiency, inadequacy or dangerous condition in the design or manufacture of such product;

(2) failure of any product to perform as advertised or represented; or

(3) bodily injury caused by any such product as described in (1) or (2) above.

However, this Exclusion shall not apply to a **Securities Claim**.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

Directors & Officers Liability ☒
Employed Lawyers Liability ☐
Employment Practices Liability ☒
Fiduciary Liability ☐

## ENDORSEMENT NO. 14

### AMEND CONTRACT EXCLUSION -
### DELETE DEFENSE COSTS CARVEOUT;
### ADD SECURITIES CLAIMS CARVEOUT

This Endorsement, effective at 12:01 a.m. on May 22, 2015, forms part of

|  |  |
|---|---|
| Policy No. | 0309-6091 |
| Issued to | DJB Holdings LLC |
| Issued by | Darwin National Assurance Company |

In consideration of the premium charged, Section III., EXCLUSIONS, of each Coverage Section selected above, is amended as follows:

1. Exclusion D. of the Directors and Officers Liability Coverage Section is deleted in its entirety and replaced with the following:

    D.    based upon, arising from, or in consequence of any actual or alleged liability of any **Insured** under any express contract or agreement; provided however, that this Exclusion shall not apply: (1) to the extent that such **Insured** would have been liable in the absence of such contract or agreement; or (2) to any **Securities Claim**;

2. Exclusion B. of the Employment Practices Liability Coverage Section is deleted in its entirety and replaced with the following:

    B.    based upon, arising from, or in consequence of any actual or alleged liability of any **Insured** under any express contract or agreement provided however, that this Exclusion shall not apply to the extent that such **Insured** would have been liable in the absence of such contract or agreement;

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

Directors & Officers Liability ☒
Employed Lawyers Liability ☐
Employment Practices Liability ☒
Fiduciary Liability ☐

**ENDORSEMENT NO. 15**

**PRIVATE COMPANY MANAGEMENT LIABILITY PACKAGE POLICY -
AMENDATORY ENDORSEMENT**

This Endorsement, effective at 12:01 a.m. on May 22, 2015, forms part of

| | |
|---|---|
| Policy No. | 0309-6091 |
| Issued to | DJB Holdings LLC |
| Issued by | Darwin National Assurance Company |

In consideration of the premium charged, each Coverage Section selected above is amended as
follows:

**GENERAL TERMS AND CONDITIONS**

1. Section XI. AUTHORIZATION AND NOTICES is deleted in its entirety and replaced with
   the following:

   **XI.  AUTHORIZATION AND NOTICES**

   The **Named Insured** shall act on behalf of all **Insureds** with respect to all matters
   as respects this Policy including: (1) giving notice of **Claim**; (2) giving and
   receiving all correspondence and information; (3) giving and receiving notice of
   cancellation; (4) payment of premiums; (5) receiving any return premiums; (6)
   receiving and accepting any endorsements issued to form a part of this Policy; and
   (7) the exercising of any right to a Discovery Period.

   However, the **Named Insured** shall not act on behalf of all **Insureds** with respect
   to the defense or settlement of a **Claim**.

**DIRECTORS AND OFFICERS LIABILITY COVERAGE SECTION**

1. The Definition of **"Claim"**, paragraph (3), is deleted in its entirety and replaced with the
   following:

   (3)  mediation or arbitration proceeding commenced against an **Insured** by service of a
        demand for mediation or arbitration;

2. The Definition of **"Employee"**, paragraphs (1) and (2), are deleted in their entirety and
   replaced with the following:

DJ Manu C                                    1

(1)     person who was, now is, or shall become a full-time, part-time, seasonal, temporary employee or intern of the **Company**, other than an **Executive**, but only while that person is acting in their capacity as such;

(2)     person leased to the **Company** or any **Independent Contractor**, so long as this person is working within his or her duties as such and the scope of services are provided solely to the **Company**, but only if the **Company** indemnifies such leased person or **Independent Contractor** in the same manner as the **Company's** employees described in paragraph (1) above; and

3.  The Definition of **"Securities Claim"**, the last of paragraph thereof, is deleted in its entirety and replaced with the following:

>   The **Insurer** shall not assert that any **Loss** incurred in a **Securities Claim** constitutes uninsurable loss due to an **Insured Person's** actual or alleged violation of Section 11 or 12 of the Securities Act of 1933, as amended, including without limitation such **Loss** of a "controlling person" within the meaning of Section 15 of the Securities Act of 1933, as amended.

4.  Exclusion H., paragraph (3), is deleted in its entirety and replaced with the following:

(3)     any **Claim** brought by any director, officer, trustee or governor of an **Outside Entity** who has not served in such capacity, nor acted as a consultant to the **Outside Entity**, for at least two (2) years prior to such **Claim** being first made;

5.  Exclusion I., paragraph (3), is deleted in its entirety and replaced with the following:

(3)     any **Claim** brought by any **Executive** who has not served in such capacity, nor has acted as a consultant to the **Company**, for at least two (2) years prior to the **Claim** being first made;

6.  Section IV. RETENTION is deleted in its entirety and replaced with the following:

**IV.   RETENTION**

>   No Retention amount is applicable to **Claims** for which coverage is provided under Insuring Agreements A., E. or F. of this Coverage Section.

## EMPLOYMENT PRACTICES LIABILITY COVERAGE SECTION

1.  The Definition of **"Claim"**, paragraph (3), is deleted in its entirety and replaced with the following:

(3)     mediation or arbitration proceeding commenced against an **Insured** by service of a demand for mediation or arbitration;

2.  The Definition of **"Employee"**, paragraphs (1) and (2), are deleted in their entirety and replaced with the following:

(1)      person who was, now is, or shall become a full-time, part-time, seasonal, temporary employee or intern of the **Company**, but only while that person is acting in their capacity as such;

(2)      person leased to the **Company** or any **Independent Contractor**, so long as this person is working within his or her duties as such and the scope of services are provided solely to the **Company**, but only if the **Company** indemnifies such leased person or **Independent Contractor** in the same manner as the **Company's** employees described in paragraph (1) above; and

## FIDUCIARY LIABILITY COVERAGE SECTION

1. The Definition of "**Loss**", paragraph 6 (f), is deleted in its entirety and replaced with the following:

    (f)      **Benefits**, or that portion of any settlement or award in an amount equal to such **Benefits**, unless and to the extent that recovery of such **Benefits** is based upon a covered **Wrongful Act** and is payable as a personal obligation of an **Insured Person**; provided, however, that **Loss** shall include a monetary award in, or fund for settling, a **Claim** against any **Insured** to the extent it alleges a loss to a **Plan** and/or loss in the actual accounts of participants in any **Plan** by reason of a change in value of the investments held by that **Plan**, including, but not limited to, the securities held by the **Plan**, regardless of whether the amounts sought in such **Claim** have been characterized by plaintiffs as "benefits" or held by a court to be "benefits";

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

Directors & Officers Liability ☐
Employed Lawyers Liability ☐
Employment Practices Liability ☒
Fiduciary Liability ☐

## ENDORSEMENT NO. 16

## IRCA VIOLATION NOTICE COVERAGE

This Endorsement, effective at 12:01 a.m. on May 22, 2015, forms part of

Policy No.      0309-6091
Issued to       DJB Holdings LLC
Issued by       Darwin National Assurance Company

In consideration of the premium charged, in connection with the Coverage Section(s) selected above, it is hereby agreed that:

1.   The **Insurer** shall reimburse the **Company** for **Investigation Costs** incurred and paid by the **Company** during the **Policy Period**, or if purchased any Discovery Period, in connection with an **IRCA Violation Notice** received by the **Company** during the **Policy Period**. Provided that, the most the **Insurer** shall reimburse the **Insured** for all **Investigation Costs** in connection with all **IRCA Violation Notices** received by the **Company** during the applicable period shall be $25,000 in the aggregate, such amount to be part of and not in addition to the Limit of Liability set forth in the Declarations. The payment of **Investigation Costs** shall be subject to a Retention to be paid by the **Insured** in the amount of $25,000 per **IRCA Violation Notice**.

2.   Section II. DEFINITIONS is amended to include the following definitions:

**Investigation Costs** means reasonable costs, charges, fees and expenses (other than overhead, or regular or overtime wages or salaries for employees, of the **Company**) incurred by the **Company**, including its board of directors or any committee of the board of directors, solely in connection with the **Company's** investigation of and/or response to an **IRCA Violation Notice**.

**IRCA Violation Notice** means written notification of an administrative or regulatory investigation of or hearing concerning actual or alleged violations of Section 274A. of the Immigration Reform and Control Act of 1986 (IRCA), pursuant to Sections 274A.(e)(1) through (e)(3) and (e)(8) of the IRCA.

3.   Section II. DEFINITIONS, the definition of **"Claim"** is amended to include an **IRCA Violation Notice**. Provided that in no event shall the **Insurer** have the duty to defend or directly retain a firm or third party to investigate such matter.

4.   Section II. DEFINITIONS, the definition of **"Defense Costs"** is amended to include **Investigation Costs**.

5.   The **Insurer** shall not be liable for any amounts incurred by the **Company** in connection with an **IRCA Violation Notice** other than **Investigation Costs**, including amounts: (a) to comply with or for failing to comply with any order issued pursuant to Section 274A of the IRCA; or (b) any civil penalties that the **Company** is ordered to pay pursuant to any such order; or (c) in connection with any civil action brought pursuant to Section 274A.(f) of the IRCA or any similar state or federal laws of regulations.

DJ Manu D

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

DJ Manu D

ENDORSEMENT NO. 17

WORKPLACE VIOLENCE COVERAGE SECTION

This Endorsement, effective at 12:01 a.m. on May 22, 2015, forms part of

| | |
|---|---|
| Policy No. | 0309-6091 |
| Issued to | DJB Holdings LLC |
| Issued by | Darwin National Assurance Company |

In consideration of the premium charged, it is agreed that the Workplace Violence Coverage Section (as set forth in this Endorsement) is added to this Policy as follows:

1. Item 3. of the Declarations, COVERAGE SECTIONS AND PREMIUM, is amended by adding the following:

| Liability Coverage Section | Premium |
|---|---|
| ☒ Workplace Violence Coverage Section | $Included |

2. Item 4. A. of the Declarations, LIMIT OF LIABILITY AND RETENTION FOR EACH COVERAGE SECTION, is amended by adding the following at the end thereof:

| Coverage Section | Separate Limit of Liability | Shared Limit of Liability | Retention |
|---|---|---|---|
| Workplace Violence Coverage Section | $100,000 | | All Workplace Violence Events: $20,000 |
| Personal Loss Amount Sublimit of Liability (Per Employee) | $25,000 | Shared With: | |
| Personal Loss Amount Sublimit of Liability (Per Event) | $100,000 | | |

3. This Policy is amended by adding the following:

### Workplace Violence Coverage Section

In consideration of the payment of the premium and in reliance upon the **Application**, which shall be deemed to be attached to, incorporated into, and made a part of this Policy, and subject to the General Terms and Conditions and this Coverage Section, ALLIED WORLD ASSURANCE COMPANY (U.S.) INC. (the **"Insurer"**) and the **Named Insured**, on behalf of all **Insureds**, agree as follows:

DJ Manu E                                      1

## I.   INSURING AGREEMENTS

### A.   Workplace Violence Expenses Coverage

The **Insurer** shall reimburse the **Named Insured** for **Workplace Violence Expenses** incurred by the **Company** resulting directly from a **Workplace Violence Event** that occurs during the **Policy Period** and is reported to the **Insurer** in accordance with Section V. of this Coverage Section.

### B.   Business Disruption Coverage

The **Insurer** shall reimburse the **Named Insured** for the actual lost **Income** incurred by the **Company** as a result of a disruption or suspension in **Business Operations** during the **Restoration Period** or an order by a civil authority that prohibits access to the **Premises**, in whole or in part, resulting directly from a **Workplace Violence Event** that occurs during the **Policy Period** and is reported to the **Insurer** in accordance with Section V. of this Coverage Section.

### C.   Personal Loss Coverage

The **Insurer** shall pay on behalf of the **Named Insured** a **Personal Loss Amount** for **Loss of Life** of an **Employee** resulting directly from a **Workplace Violence Event** that occurs during the **Policy Period** and is reported to the **Insurer** in accordance with Section V. of this Coverage Section.

## II.   DEFINITIONS

### A.   "**Business Operations**" means usual and customary business activities of the **Company** at the **Premises** prior to the **Workplace Violence Event**.

### B.   "**Compensation**" means the amount a **Company** compensates an **Employee**, including but not limited to salary, bonus, commission, incentive payments, and the cost of health, welfare and pension benefits.

### C.   "**Employee**" means any:

(1)   person who was, now is, or shall become a full-time, part-time, seasonal, or temporary employee of the **Company**, other than an **Executive**;

(2)   person leased to the **Company** or any **Independent Contractor**, so long as this person is working solely for the **Company**, if the **Company** indemnifies such leased person or **Independent Contractor** in the same manner as the **Company's** employees described in paragraph (1); and

(3)   volunteer whose labor and service is engaged and directed by the **Company**.

D.    **"Executive"** means:

    (1)    any past, present or future duly elected or appointed director, officer, trustee, trustee emeritus, governor, management committee member or member of the board of managers of the **Company**;

    (2)    with respect to any **Company** organized and operating in a foreign jurisdiction, any person in a position that is functionally equivalent to any executive position listed in paragraph (1) above; or

    (3)    any past, present or future General Counsel or Risk Manager of the **Company**, or any person in a position that is functionally equivalent within the **Company**.

E.    **"Guest"** means any natural person visiting the **Premises** for a lawful purpose.

F.    **"Income"** means net profit or loss, before income taxes, that would have been earned or incurred had there not been a **Workplace Violence Event.**

The loss in **Income** will be computed based upon: (a) the net profit or loss, before income taxes, of the **Named Insured's** business before the **Workplace Violence Event** occurred; and (b) the likely net profit or loss, before income taxes, the **Named Insured** would have earned during the **Period of Restoration** had a **Workplace Violence Event** not occurred.

However, in computing a loss in **Income**, such amount:

    (1)    will be reduced by any increase in net profit earned during the thirty (30) days immediately following the expiration of the **Period of Restoration** from the sales of goods or services that would have been recorded during the **Period of Restoration** but for the **Workplace Violence Event**; and

    (2)    will not include compensation, fees, benefits, overhead, or the charges or expenses of any **Insured.**

G.    **"Informant"** means any person, other than an **Insured Person**, providing information not otherwise obtainable by the **Company** and relevant to a **Workplace Violence Event**, solely in return for a reward offered by the **Company**.

H.    **"Independent Contractor"** means any natural person working in the capacity of an independent contractor pursuant to a written contract or agreement between the **Independent Contractor** and the **Company**, which specifies the terms of the **Company's** engagement of the **Independent Contractor**.

I.    **"Insured"** means any **Company** and any **Insured Person**.

J.    **"Insured Person"** means any:

    (1)    any **Employee**; or

DJ Manu E

3

(2)    any customer or **Guest** of the **Company** on the **Premises**.

K.    **"Loss of Life"** means death, inclusive of clinical death, as determined by a medical examiner or similar governing medical authority.

L.    **"Personal Loss Amount"** means the amounts set forth in Item 4.A. of the Declarations.

M.    **"Premises"** means that portion of any building or property which is owned or leased by the **Company** for the purpose of conducting its business.

N.    **"Relatives"** means spouses, domestic partners, child, step-child, adopted child, adopted stepchild, foster child, spouse of married children, grandchild, sister, brother, parent, parent-in-law, step-parent, grandparent, or grandparent-in-law.

O.    **"Restoration Period"** means the period of time which commences seventy-two (72) hours following the disruption or suspension of **Business Operations** as described in Insuring Agreement B. and ends on the earlier of:

    (1)    the date **Business Operations** are restored by the **Company** to the level that existed up to the time the **Workplace Violence Event** occurred;

    (2)    forty-five (45) days after a civil authority prohibits the **Insured** access to the **Premises**; or

    (3)    ninety (90) days after the suspension of **Business Operations**.

P.    **"Workplace Violence Event"** means any intentional and unlawful act:

    (1)    of deadly force involving the use of a lethal weapon; or

    (2)    where there is a threat of the use of deadly force through the display of a lethal weapon,

which occurs on or in the **Premises** and which could or did result in bodily injury or death to an **Insured Person**.

Q.    **"Workplace Violence Expenses"** means the following reasonable costs and expenses:

    (1)    an amount paid by the **Company** to:

        (a)    an independent security consultant for a period of ninety (90) days following the date the **Workplace Violence Event** occurred;

        (b)    an independent public relations firm for a period of ninety (90) days following the date the **Workplace Violence Event** occurred (such costs and amounts are not eligible for coverage under this Coverage Section in the event the **Insurer** pays such costs and amounts under Insuring Agreement E. of the Directors and Officers Coverage Section);

(c)    independent security guards for security services, retained at the recommendation of the independent security consultant, for a period of time no greater then sixty (60) days;

(d)    an independent forensic analyst;

(e)    an **Informant** as a reward for information leading to the arrest and conviction of the person(s) responsible for the **Workplace Violence Event**; and

(f)    counseling seminar for all **Employees** conducted by an independent consultant following a **Workplace Violence Event**;

(2)    an amount paid by the **Company** for:

(a)    salary and wages paid, at an annual rate, to retain a temporary replacement for the **Employee** who is a victim of **Workplace Violence Event**. Coverage shall apply to such salary and wages in effect at the time of such **Workplace Violence Event** and will end ninety (90) days following the date such **Workplace Violence Event** occurred;

(b)    **Compensation** to an **Employee** who has been a victim of **Workplace Violence Event**. Coverage shall apply to such **Compensation** in effect at the time of such **Workplace Violence Event** and will end ninety (90) days following the date such **Workplace Violence Event** occurred;

(c)    medical services, psychiatric care, or cosmetic or plastic surgery which is deemed required by a medical professional to correct any permanent disfigurement sustained by an **Insured Person** during a **Workplace Violence Event**, provided that such services are provided within twelve (12) months immediately following the **Workplace Violence Event**;

(d)    reasonable expenses, including the cost of meals, accommodations and recreation, for the rest and recovery of an **Insured Person** and the **Insured Person's Relatives**, for a period of up to thirty (30) days, provided that such expenses are incurred within twelve (12) months immediately following the **Workplace Violence Event**; and

(e)    other reasonable costs or expenses incurred by an **Insured,** with the prior written consent of the **Insurer.**

## III.  EXCLUSIONS

This Coverage Section shall not provide coverage for:

A. any loss resulting directly or indirectly from declared or undeclared war, civil war, insurrection, rebellion or revolution, military, naval or usurped power,

governmental intervention, expropriation or nationalization, or any act or condition incidental to any of the foregoing;

B. any **Workplace Violence Event** that occurs at or on any location other than the **Premises;**

C. any legal costs, judgments and settlements incurred as a result of any claim, suit or judicial action or proceeding brought against an **Insured** in connection with any **Workplace Violence Event;**

D. loss in any face-to-face encounter involving the use of, or threat to use, force or violence for the purpose of demanding monies, securities or property;  or

E. any loss resulting directly or indirectly from a **Workplace Violence Event** that any **Insured** is aware of prior to the Inception Date of this Coverage Section.

## IV.   DISCOVERY PERIOD

The **Insured(s)** shall not have the right to purchase a Discovery Period with respect to this Coverage Section.

## V.   NOTICE OF CLAIM AND PROOF OF LOSS

As a condition precedent to the obligations of the **Insurer** under this Coverage Section, the **Insured(s)** shall:

A. give written notice to the **Insurer**, at either the physical or email address indicated in Item 7. of the Declarations, of a **Workplace Violence Event** as soon as practicable after the **Company's** General Counsel or Risk Manager, or any individual with functionally equivalent responsibilities, becomes aware of the **Workplace Violence Event;**

B. provide such notice as set forth in paragraph (1) above no later than sixty (60) days after such **Workplace Violence Event** has occurred (if mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice);

C. furnish the **Insurer** with a sworn Proof of Loss with full particulars within six (6) months of such **Workplace Violence Event**, which shall include the production of all relevant records and documents as the **Insurer** shall request;

D. submit to examination under oath at the **Insurer's** request concerning any matter relating to this insurance or any claim as respects a **Workplace Violence Event**; and

E. cooperate with the **Insurer** in all aspects of the **Insurer's** investigation, adjustment and settlement of any claim as respects a **Workplace Violence Event.**

## VI.  ACTION AGAINST THE INSURER

No action may be taken against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all material terms of this Coverage Section and Policy.  In addition, such action may not be brought until ninety (90) days after the **Insured** has filed a Proof of Loss with the **Insurer** and must be brought within two (2) years from the date of the **Workplace Violence Event**.

## VII.  LOSS SUSTAINED

A covered loss under this Coverage Section shall be deemed to have been sustained by the **Insured**:

A.   under Insuring Agreement A., at the time of the payment of **Workplace Violence Expenses** by the **Named Insured**;

B.   under Insuring Agreement B., upon the expiration of the **Restoration Period**; or

C.   under Insuring Agreement C., upon the actual time the **Loss of Life** occurs.

## VIII. LIMIT OF LIABILITY

A.   The Limit of Liability for this Coverage Section, as set forth in Item 4.A. of the Declarations, is the maximum Limit of Liability of the **Insurer** for all amounts payable by the **Insurer** as respects all **Workplace Violence Events** occurring during the **Policy Period,** regardless of the number of **Workplace Violence Events** or the number of **Insureds** involved in such **Workplace Violence Events**.

B.   The maximum Limit of Liability of the **Insurer** for all rest and rehabilitation **Workplace Violence Expenses** covered under Insuring Agreement A. arising from a single **Workplace Violence Event** or a series of related **Workplace Violence Events** shall be fifty-thousand dollars ($50,000).  Such amount shall be part of, and not in addition to, the Limit of Liability for this Coverage Section as set forth in Item 4.A. of the Declarations.

C.   The maximum Limit of Liability of the **Insurer** for all lost **Income** covered under Insuring Agreement B. arising from a single **Workplace Violence Event** or a series of related **Workplace Violence Events** shall be twenty-five percent (25%) of the Limit of Liability for this Coverage Section, as set forth in Item 4.A. of the Declarations.  Such amount shall be part of, and not in addition to, the Limit of Liability for this Coverage Section as set forth in Item 4.A. of the Declarations.

D.   The Personal Loss Amount Sublimit of Liability (Per Employee), as set forth in Item 4.A. of the Declarations, shall be part of, and not in addition to, the Limit of Liability for this Coverage Section as set forth in Item 4.A. of the Declarations.  Such Sublimit of Liability is the maximum Limit of Liability of the **Insurer** for

all **Personal Loss** as respects each **Employee** from a **Workplace Violence Event** occurring during the **Policy Period**.

E.   The Personal Loss Amount Sublimit of Liability (Per Event), as set forth in Item 4.A. of the Declarations, shall be part of, and not in addition to, the Limit of Liability for this Coverage Section as set forth in Item 4.A. of the Declarations. In the event that more than one **Employee** suffers a **Loss of Life** as a direct result of a covered **Workplace Violence Event** and the total **Personal Loss Amount** exceeds the Personal Loss Amount Sublimit of Liability (Per Event), the **Insurer** shall provide coverage for each **Employee** on an allocated basis which shall be an equal percentage based upon the number of **Employees** who have suffered such **Loss of Life**.   Such Sublimit of Liability is the maximum Limit of Liability of the **Insurer** for **Personal Loss** as respects each **Workplace Violence Event** occurring during the **Policy Period**.

F.   If the Limit of Liability for this Coverage Section, as set forth in Item 4.A. of the Declarations, is exhausted due to amounts paid by the **Insurer** under the terms of this Coverage Section, all obligations of the **Insurer** under this Policy with respect to this Coverage Section will be completely fulfilled, and the **Insurer** will have no further obligations under this Policy of any kind with respect to this Coverage Section.   In such event, the premium for this Coverage Section, as set forth in Item 3. of the Declarations, will be fully earned.

G.   Any amounts paid by the **Insurer** under the Limit of Liability for this Coverage Section as set forth in Item 4.A. of the Declarations shall reduce and may exhaust the Aggregate Limit of Liability as set forth in Item 4.B. of the Declarations. If the Aggregate Limit of Liability is exhausted by such amounts paid under this Coverage Section and by the payment of **Loss** under any other Coverage Section, the **Insurer** will have no further obligations of any kind with respect to this Policy, and the Total Policy Premium set forth in Item 3. of the Declarations will be fully earned.

## IX.   TERRITORY

This Coverage Section applies to **Workplace Violence Events** occurring or loss incurred anywhere in the world, to the extent permitted by law.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

## POLICYHOLDER DISCLOSURE STATEMENT
## UNDER THE TERRORISM RISK INSURANCE ACT

The Insured is hereby notified that under the federal Terrorism Risk Insurance Act, as amended, (the "Act"), the Insured has a right to purchase insurance coverage for losses arising out of an Act of Terrorism, as defined in Section 102(1) of the Act:  The term "act of terrorism" means any act that is certified by the Secretary of the Treasury in consultation with the Secretary of Homeland Security and the Attorney General of the United States to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside of the United States in case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. The Insured should read the Act for a complete description of its coverage. The decision to certify or not to certify an event as an Act of Terrorism covered by this law is final and not subject to review.

The Insured should know that where coverage is provided by this policy for losses caused by a Certified Act of Terrorism may be partially reimbursed by the United States Government under a formula established by federal law.  However, the insured's policy may contain other exclusions that might affect coverage, such as an exclusion for nuclear events.  Under the formula, the United States generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019; and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible that must be met by the Insurer, and which deductible is based on a percentage of the Insurer's direct earned premiums for the year preceding the Act of Terrorism

Be advised that the Terrorism Risk Insurance Act, as amended, contains a $100 billion cap on all losses resulting from Certified Acts of Terrorism.  If aggregate insured losses attributable to Certified Acts of Terrorism exceed $100 billion in a calendar year the United States Government shall not make any payment for any portion of the amount of such loss that exceeds $100 billion. If aggregate insured losses attributable to Acts of Terrorism exceed $100 billion in a Program Year and the Insurer has met its deductible under the Act, the Insurer shall not be liable for payment of any portion of the losses that exceeds $100 billion, and in such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Coverage for "insured losses" as defined in the Act is subject to the coverage terms, conditions, amounts and limits in this policy applicable to losses arising from events other than Acts of Terrorism. **Please see the options available to the Insured below.**

- If you, the Insured, **elect to purchase coverage** in accordance with the Act, there will be $0.00 additional premium due and **no further action or response is needed by you**.

- If you, the Insured, reject coverage in accordance with the Act, you must check below and sign and return this form to the Insurer.

☐    I HEREBY REJECT THIS COVERAGE.

_____          _____
Signature of Insured                                   Insured's Name

_____          _____
Print/Title                                                  Insured's Policy Number

_____
Date

**DARWIN NATIONAL ASSURANCE COMPANY**

# FORCEFIELD℠
## PRIVATE COMPANY
**MANAGEMENT LIABILITY PACKAGE POLICY**
**General Terms and Conditions**

In consideration of the payment of the premium and in reliance upon the **Application**, which shall be deemed to be attached to, incorporated into, and made a part of this Policy, and subject to these General Terms and Conditions and any purchased Coverage Sections, as indicated in Item 3. of the Declarations, DARWIN NATIONAL ASSURANCE COMPANY (the **"Insurer"**) and the **Named Insured**, on behalf of all **Insureds**, agree as follows:

## I. TERMS AND CONDITIONS

The terms and conditions set forth in these General Terms and Conditions shall apply to all purchased Coverage Sections of this Policy, except the Crime and the Kidnap and Ransom/Extortion Coverage Sections. The terms appearing in these General Terms and Conditions, which are defined in a specific Coverage Section, shall have the meaning provided for such terms in such Coverage Section for purposes of determining coverage thereunder. The terms and conditions of each Coverage Section apply only to that particular Coverage Section. If any of the terms or conditions in these General Terms and Conditions are inconsistent or in conflict with the terms and conditions of any specific Coverage Section, the terms and conditions of such Coverage Section shall control.

## II. GENERAL DEFINITIONS

A. **"Application"** means all applications, including any attachments and other materials provided therewith or incorporated therein, submitted in connection with the underwriting of this Policy or for any other policy of which this Policy is a renewal, replacement or which it succeeds in time.

B. **"Company"** means:

    (1)    the **Named Insured**;

    (2)    any **Subsidiary** of the **Named Insured**; and

    (3)    the **Named Insured** or **Subsidiary** as a debtor, a debtor-in-possession or equivalent status.

C. **"Management Control"** means:

    (1)    owning interests representing more than fifty percent (50%) of the voting, appointment or designation power for the selection of a majority of the Board of Directors of a corporation; the Management Committee members of a joint venture; or the members of the Management Board of a limited liability company; or

    (2)    having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents, to elect, appoint or designate

a majority of: the Board of Directors of a corporation; the Management Committee of a joint venture; or the Management Board of a limited liability company.

D.    **"Named Insured"** means the entity named in Item 1. of the Declarations.

E.    **"Policy Period"** means the period from the Inception Date shown in Item 2. of the Declarations to the earlier of the Expiration Date shown in Item 2. of the Declarations or the effective date of cancellation of this Policy.

F.    **"Related Claims"** means all **Claims** for **Wrongful Acts** based upon, arising out of, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.

G.    **"Subsidiary"** means:

(1)    any for-profit entity in which the **Named Insured** has **Management Control** ("Controlled Entity") before the Inception Date set forth in Item 2. of the Declarations, either directly or indirectly through one or more other Controlled Entities;

(2)    any for-profit entity, whose securities are not publicly traded, of which the **Named Insured** acquires **Management Control** during the **Policy Period**, either directly or indirectly through one or more other Controlled Entities; or

(3)    any not-for-profit organization sponsored exclusively by a **Company** prior to or during the **Policy Period**.

Coverage afforded under this Policy for a **Claim** made against any **Insured** relating to a **Wrongful Act** of a **Subsidiary**, shall only apply to **Wrongful Acts** committed or allegedly committed after the effective date such organization or entity becomes a **Subsidiary** and prior to the effective date that such organization or entity ceases to be a **Subsidiary**.

## III.    LIMITS OF LIABILITY

A.    The Limits of Liability For Each Coverage Section, as set forth in Item 4.A. of the Declarations, are the maximum Limits of Liability of the **Insurer** for all **Loss** from all **Claims** first made during the **Policy Period** or Discovery Period, if applicable, for each respective Coverage Section.

B.    The Aggregate Limit of Liability, as set forth in Item 4.B. of the Declarations, is the maximum Limit of Liability of the **Insurer** for all **Loss** from all **Claims** first made during the **Policy Period**, or Discovery Period if applicable, for all purchased Coverage Sections listed under Item 4.A. of the Declarations and purchased by the **Insured**, regardless of whether or not the Limits of Liability for any such Coverage Sections are shared.

C.   Any Sublimit of Liability, whether set forth in Item 4.F. of the Declarations, or as otherwise provided under the terms of this Policy, shall be part of, and not in addition to, the applicable Limit of Liability set forth in Item 4.A. of the Declarations.  Each Sublimit of Liability is the maximum Limit of Liability of the **Insurer** for all **Loss** from all **Claims** first made during the **Policy Period** or Discovery Period if applicable, to which the Sublimit of Liability applies.

D.   If any Limit of Liability for an individual Coverage Section as set forth in Item 4.A. of the Declarations is exhausted by the payment of **Loss**, all obligations of the **Insurer** under this Policy with respect to the individual Coverage Section will be completely fulfilled, and the **Insurer** will have no further obligations under this Policy of any kind with respect to the individual Coverage Section.  In such event, the premium for the individual Coverage Section, as set forth in Item 3. of the Declarations, will be fully earned.

E.   Any payment of **Loss** under any Limit of Liability set forth in Items 4.A. or 4.F. of the Declarations shall reduce and may exhaust the Aggregate Limit of Liability set forth in Item 4.B. of the Declarations. If the Aggregate Limit of Liability is exhausted by the payment of **Loss**, the **Insurer** will have no further obligations of any kind with respect to this Policy, and the Total Policy Premium set forth in Item 3. of the Declarations will be fully earned.

F.   **Defense Costs** are part of, and not in addition to, the Limits of Liability set forth in Item 4. of the Declarations, and payment by the **Insurer** of **Defense Costs** shall reduce and may exhaust such Limits of Liability.

G.   The purchase of a Discovery Period pursuant to Section VI. of this General Terms and Conditions, shall neither increase nor reinstate any Limit of Liability.

## IV.   RETENTION

A.   Subject to all other terms and conditions of this Policy, the **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim**, which is in excess of the applicable Retention amount as set forth in Item 4.A. of the Declarations for each Coverage Section.  A single Retention amount shall apply to all **Loss** from all **Related Claims**.  The Retention amount shall be borne by the **Insureds** and remain uninsured.

B.   The application of the Retention to **Loss** under one Coverage Section shall not reduce the Retention that applies to **Loss** under any other Coverage Section.  If different Retention amounts apply to different parts of a **Claim**, the applicable Retentions shall be applied separately to each part of the **Claim**, and the sum of such Retention amounts shall not exceed the largest single Retention amount which applies to such **Claim.**

C.   If the **Company** is legally required or permitted to indemnify its **Insured Person** for any **Loss**, and does not do so for any reason, the **Insurer** shall not require payment of the applicable Retention by the **Insured Person**.  However, the **Company** hereby agrees to reimburse the **Insurer** for the full amount of such Retention immediately upon request, unless the **Company** is unable to do so solely by reason of **Financial Impairment**.

## V.      NOTICE OF CLAIM

A.      The **Insured(s)** shall, as a condition precedent to the obligations of the **Insurer** under this Policy, give written notice to the **Insurer**, at either the physical or email address indicated in Item 7. of the Declarations, of a **Claim** made against an **Insured** as soon as practicable after the **Company's** General Counsel or Risk Manager, or any individual with functionally equivalent responsibilities, becomes aware of the **Claim**.

B.      Notwithstanding the above, in no event shall notice of any **Claim** be provided to the **Insurer** later than ninety (90) days after the end of the **Policy Period** or Discovery Period if applicable.  If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

C.      If during the **Policy Period** an **Insured** shall become aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against an **Insured** and shall, during the **Policy Period**, give written notice to the **Insurer** at either the physical or email address indicated in Item 7. of the Declarations, of the circumstances, including the **Wrongful Act**, allegations anticipated, and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, any **Claim** that is subsequently made against the **Insured** alleging, arising out of, based upon or attributable to such circumstances, shall be deemed to have been made at the time written notice of such circumstances was first given to the **Insurer**.

D.      All **Related Claims** shall be deemed to be a single **Claim** made on the date on which the earliest **Claim** within such **Related Claims** was first made, or when the earliest **Claim** within such **Related Claims** is treated as having been made in accordance with Section V.C. above, whichever is earlier.  In such event, only one Limit of Liability and one Retention shall apply.

## VI.     DISCOVERY PERIOD

A.      If this Policy, or one or more Coverage Sections of this Policy, is cancelled by either the **Named Insured** or the **Insurer** for any reason other than non-payment of premium, or the **Insurer** refuses to renew this Policy, the **Insured(s)** shall have the right to purchase a Discovery Period of up to six (6) years following the effective date of such cancellation or non-renewal.  In the event of cancellation or non-renewal of one or more Coverage Sections of this Policy, the **Insured** may purchase a Discovery Period only with respect to the Coverage Sections that have been cancelled or non-renewed.

B.      If an Organizational Change as defined in Section X. occurs, the **Insured(s)** shall have the right to purchase a Discovery Period of up to six (6) years following the effective date of such Organizational Change.

C.      The **Insured's** right to purchase a Discovery Period shall lapse unless written notice of its election to purchase such Discovery Period and the additional premium for such Discovery Period, is received by the **Insurer** within sixty (60) days after such cancellation, non-renewal or Organizational Change.

D.   The additional premium for a Discovery Period of one (1) to six (6) years shall be determined by multiplying the applicable percentage set forth in Item 6. of the Declarations by either: the Total Policy Premium, in the event that a Discovery Period is elected for the entire Policy; or by the premium amount(s) for the individual Coverage Section(s), in the event that a Discovery Period is elected only for individual Coverage Section(s).

E.   During the Discovery Period, the **Insured** may provide the **Insurer** with notice, pursuant to Section V. of this General Terms and Conditions, of **Claims** first made during the Discovery Period, for **Wrongful Acts** occurring prior to the effective date of the cancellation or nonrenewal, or the effective date of the Organizational Change, and otherwise covered by this Policy.

F.   The election of a Discovery Period does not increase or reinstate the Limits of Liability set forth in Item 4. of the Declarations.

G.   The premium for the Discovery Period shall be fully earned at inception of the Discovery Period, and the Discovery Period shall be non-cancellable.

## VII.   OTHER INSURANCE

A.   The insurance provided by this Policy, other than the Employment Practices Liability Coverage Section, shall apply only as excess over any other valid and collectible insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written specifically as excess insurance over the applicable Limit of Liability provided by this Policy. This Policy shall specifically be excess of any other valid and collectible insurance pursuant to which any other insurer has a duty to defend a **Claim** for which this Policy may be obligated to pay **Loss**. This Policy shall not be subject to the terms and conditions of any other insurance policy.

B.   With respect to the insurance provided by the Employment Practices Liability Coverage Section, such insurance shall be primary, unless expressly written to be excess over other applicable insurance.

C.   With respect to the insurance provided by the Employed Lawyers Coverage Section, such insurance shall apply excess over any other Directors and Officers Liability insurance, whether available under this Policy or otherwise.

D.   In connection with any covered **Claim** made against an **Outside Entity Insured Person**, a leased employee, or an **Independent Contractor**, and subject to all other terms and conditions herein, this Policy shall apply specifically excess of any indemnification and any other insurance coverage available to the **Outside Entity Insured Person**, leased employee or **Independent Contractor**. In the event such other insurance coverage is also provided by the **Insurer** or any affiliate thereof (or would be provided except for the application of any retention, exhaustion of a limit of liability, or failure to submit notice of a claim) then the **Insurer's** maximum aggregate Limit of Liability for all **Loss** in connection with a **Claim** covered, in whole or in part, by this Policy and such other insurance policy, shall be the greater of: (1) the applicable Limit of Liability of this Policy; or (2) the applicable limit of liability of such other insurance policy.

## VIII.   COVERAGE EXTENSIONS

A.   This Policy shall cover **Loss** arising from any **Claims** made against the estates, heirs, or legal representatives of any deceased person who was an **Insured Person** at the time the **Wrongful Acts** upon which such **Claims** are based were committed; provided, however, that this extension shall not afford coverage for any **Claim** for any actual or alleged **Wrongful Act** by or on the part of any such estates, heirs, or legal representatives, but shall apply only to **Claims** arising out of any actual or alleged **Wrongful Acts** of an **Insured Person**.

B.   This Policy shall also cover **Loss** arising from any **Claims** made against the legal representatives of any incompetent, insolvent or bankrupt person who was an **Insured Person** at the time the **Wrongful Acts** upon which such **Claims** are based were committed; provided, however, that this extension shall not afford coverage for any **Claim** for any actual or alleged **Wrongful Act** by or on the part of any such legal representatives, but shall apply only to **Claims** arising out of any actual or alleged **Wrongful Acts** of an **Insured Person**.

C.   This Policy shall also cover **Loss** arising from any **Claims** made against the lawful spouse or domestic partner (whether such status is derived by reason of the statutory law or common law of any applicable jurisdiction in the world, or by any formal program established by the **Company**) of an **Insured Person** for all **Claims** arising solely out of his or her status as the spouse or domestic partner of an **Insured Person**, including a **Claim** that seeks damages recoverable from marital community property, property jointly held by the **Insured Person** and the spouse or domestic partner, or property transferred from the **Insured Person** to the spouse or domestic partner; provided, however, that this extension shall not afford coverage for any **Claim** for any actual or alleged **Wrongful Act** by or on the part of the spouse or domestic partner, but shall apply only to **Claims** arising out of any actual or alleged **Wrongful Acts** of an **Insured Person**.

D.   The coverage extensions set forth in this Section VIII. are subject to all other terms and conditions of this Policy.

## IX.   CANCELLATION AND NON RENEWAL

A.   This Policy, or any individual Coverage Section, may be cancelled by the **Named Insured** by sending written prior notice to the **Insurer** stating when thereafter the cancellation of the Policy, or the individual Coverage Section, shall be effective. The Policy, or the individual Coverage Section, terminates at the date and hour specified in such notice. The **Insurer** shall retain the pro rata proportion of the premium for either the Policy, or the individual Coverage Section cancelled, as applicable.

B.   This Policy, or any individual Coverage Section, shall not be cancelled by the **Insurer** except by reason of non-payment of premium by the **Insured**. The **Insurer** may cancel the Policy by delivering or mailing to the **Named Insured**, by registered mail or by courier, at the address set forth in Item 1. of the Declarations, written notice stating when, not less than twenty (20) days thereafter, cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. In the event of such cancellation, the Policy

will be deemed terminated as of the date indicated in the **Insurer's** written notice of cancellation to the **Named Insured**.

C.   Payment or tender of any unearned premium by the **Insurer** shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

D.   The **Insurer** shall have no obligation to renew this Policy or any individual Coverage Section.  In the event the **Insurer** decides to non-renew this Policy or any individual Coverage Section, it shall deliver or mail to the **Named Insured**, at the address set forth in Item 1. of the Declarations, written notice of such decision at least sixty (60) days prior to the expiration of the **Policy Period**.

X.   **ORGANIZATIONAL CHANGES**

A.   If, during the **Policy Period**:

(1)   the **Named Insured** shall consolidate with, merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

(2)   any person or entity or group of persons or entities acting in concert shall acquire more than fifty percent (50%) of the assets or voting rights of the **Named Insured**,

(any event described in paragraphs (1) or (2) are referred to herein as an "Organizational Change") then this Policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective date of the Organizational Change.  However, there shall be no coverage afforded by this Policy for any actual or alleged **Wrongful Act** occurring after the effective date of the Organizational Change. This Policy shall be non-cancellable and the entire premium shall be deemed fully earned upon the effective date of the Organizational Change.

B.   The **Insured** shall have the right to purchase a Discovery Period described in Section VI. of this General Terms and Conditions, in the event of an Organizational Change.

C.   The **Named Insured** shall give the **Insurer** written notice of the Organizational Change as soon as practicable, but no later than thirty (30) days after the effective date of the Organizational Change.

XI.   **AUTHORIZATION AND NOTICES**

The **Named Insured** shall act on behalf of all **Insureds** with respect to all matters as respects this Policy including: (1) giving of notice of **Claim**; (2) the defense or settlement of a **Claim**; (3) giving and receiving of all correspondence and information; (4) giving and receiving notice of cancellation; (5) payment of premiums; (6) receiving of any return premiums; (7) receiving and accepting of any endorsements issued to form a part of this Policy; and (8) the exercising of any right to a Discovery Period.

**XII.   VALUATION AND CURRENCY**

All amounts stated in this Policy are expressed in United States dollars and all amounts payable under this Policy are payable in United States dollars. If a judgment rendered or settlement entered into under this Policy is stated in a currency other than United States dollars, then payment under this Policy shall be made in United States dollars at the rate of exchange published in the *Wall Street Journal* on the date the final judgment is rendered or the settlement payment is established.

**XIII.   TERRITORY**

This Policy extends to **Wrongful Acts** occurring, or **Claims** made, anywhere in the world, to the extent permitted by law.

**XIV.   ASSIGNMENT AND CHANGES TO THE POLICY**

A.   This Policy and any and all rights hereunder are not assignable without the prior written consent of the **Insurer**.

B.   Notice to any agent or knowledge possessed by any agent or person acting on behalf of the **Insurer**, will not result in a waiver or change in any part of this Policy or prevent the **Insurer** from asserting any right under the terms and conditions of this Policy. The terms and conditions of this Policy may only be waived or changed by written endorsement signed by the **Insurer**.

**XV.   SUBROGATION**

In addition to any right of subrogation existing at law, in equity or otherwise, in the event of any payment by the **Insurer** under this Policy, the **Insurer** shall be subrogated to the extent of such payment to all of the **Insured(s)'** rights of recovery. The **Insured(s)** shall execute all papers required (including those documents necessary for the **Insurer** to bring suit or other form of proceeding in their name) and do everything that may be necessary to pursue and secure such rights.

**XVI.   ACTION AGAINST THE INSURER**

No action may be taken against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all material terms of this Policy and the amount of the **Insured's** obligation has been fully determined either by judgment against the **Insured** after actual trial, or by written agreement of the **Insured**, the claimant and the **Insurer**.

**XVII.   CONFORMITY TO STATUTE**

A.   Any terms of this Policy which are in conflict with the terms of any applicable laws construing this Policy, including any endorsement to this Policy which is required by any state Department of Insurance or equivalent authority ("State Amendatory Endorsement"), are hereby amended to conform to such laws. Nothing herein shall be construed to restrict the terms of any State Amendatory Endorsement.

B.   In the event any portion of this Policy shall be declared or deemed invalid or unenforceable under applicable law, such invalidity or unenforceability shall not affect the validity or enforceability of any other portion of this Policy.

## XVIII. HEADINGS

The descriptions in the headings and any subheading of this Policy, including any titles given to any endorsement attached hereto, are inserted solely for convenience and do not constitute any part of this Policy's terms or conditions.

**DARWIN NATIONAL ASSURANCE COMPANY**

# FORCEFIELD<sup>SM</sup>
## PRIVATE COMPANY
### MANAGEMENT LIABILITY PACKAGE POLICY
### Directors and Officers Liability Coverage Section

In consideration of the payment of the premium and in reliance upon the **Application**, which shall be deemed to be attached to, incorporated into, and made a part of this Policy, and subject to the General Terms and Conditions and this Coverage Section, DARWIN NATIONAL ASSURANCE COMPANY (the "**Insurer**") and the **Named Insured**, on behalf of all **Insureds**, agree as follows:

## I.    INSURING AGREEMENTS

### A.    Claims Against Insured Persons – Non-indemnifiable Loss Coverage

The **Insurer** shall pay on behalf of any **Insured Person** the **Loss** arising from a **Claim**, first made during the **Policy Period** (or Discovery Period, if applicable) against such **Insured Person** for any **Wrongful Act**, and reported to the **Insurer** in accordance with Section V. of the General Terms and Conditions, unless the **Company** is required or permitted to pay such **Loss** to or on behalf of the **Insured Person** as indemnification.

### B.    Claims Against Insured Persons – Indemnifiable Loss Coverage

The **Insurer** shall pay on behalf of the **Company** the **Loss** arising from a **Claim**, first made during the **Policy Period** (or Discovery Period, if applicable) against any **Insured Person** for any **Wrongful Act**, and reported to the **Insurer** in accordance with Section V. of the General Terms and Conditions, if the **Company** pays such **Loss** to or on behalf of the **Insured Person** as indemnification.

### C.    Company Claims Coverage

The **Insurer** shall pay on behalf of the **Company** the **Loss** arising from a **Claim**, first made during the **Policy Period** (or Discovery Period, if applicable) against the **Company** for any **Wrongful Act**, and reported to the **Insurer** in accordance with Section V. of the General Terms and Conditions.

### D.    Derivative Demand Coverage

The **Insurer** shall pay on behalf of the **Company** the **Derivative Costs** incurred by the **Company** in response to a **Derivative Demand** first made during the **Policy Period** (or Discovery Period, if applicable) for any **Wrongful Act** of any **Executive**, and reported to the **Insurer** in accordance with Section V. of the General Terms and Conditions. The Sublimit of Liability for **Derivative Costs** set forth in Item 4.F. of the Declarations is the **Insurer's** maximum Limit of Liability for all **Derivative Costs**. The Sublimit of Liability shall be part of, and not in addition to, the Limit of Liability applicable to this Coverage Section, as

set forth in Item 4.A. of the Declarations.  This Insuring Agreement D. shall not provide coverage for any civil proceeding that is based upon or arises from a **Derivative Demand**.

E.    **Crisis Event Coverage**

The **Insurer** shall reimburse the **Company** for **Response Costs** incurred by the **Company** in response to a **Crisis Event** which first takes place during the **Policy Period**, and reported to the **Insurer** in accordance with Section V. of the General Terms and Conditions.  The Sublimit of Liability for **Response Costs** set forth in Item 4.F. of the Declarations is the **Insurer's** maximum Limit of Liability for all **Response Costs**.  The Sublimit of Liability shall be part of, and not in addition to, the Limit of Liability applicable to this Coverage Section, as set forth in Item 4.A. of the Declarations.  This Insuring Agreement E. shall not provide coverage for any **Claim** that arises from a **Crisis Event**.

F.    **Dedicated Excess Coverage for Insured Persons**

The Limit of Liability set forth in Item 4.F. of the Declarations for Dedicated Excess Coverage for Insured Persons, shall apply excess of the **Insurer's** liability under Insuring Agreement A. of this Coverage Section only.  Such Limit of Liability is in addition to the Policy Aggregate Limit of Liability stated in Item 4.B. of the Declarations.

(1)    Such Limit of Liability shall apply only after:

(a)    the full amount of the Directors and Officers Limit of Liability stated in Item 4.A. of the Declarations has been fully exhausted due to the payment of **Loss**; and

(b)    the **Company** or the **Insured Persons** shall have paid the full amount of any applicable Retention; and

(c)    any other valid and collectible insurance written as excess over the coverage provided by this Policy has been exhausted by reason of the payment of loss thereunder.

The coverage provided by this Insuring Agreement F. shall become primary and continue in force as primary insurance only in the event of F.(1)(a), (b) and (c) above, and shall not become primary insurance for any other reason.

## II.    DEFINITIONS

A.    "**Affiliate**" means any person or entity that directly, or indirectly through one or more intermediaries:

(1)    controls or is controlled by, or is in common control with, another person or entity; or

(2)    is a successor-in-interest to another person or entity.

B.  **"Claim"** means any:

(1)  written demand for monetary, non-monetary or injunctive relief made against an **Insured;**

(2)  judicial, administrative or regulatory proceeding, whether civil or criminal, for monetary, non-monetary or injunctive relief commenced against an **Insured**, including any appeal therefrom, which is commenced by:

    (a)  service of a complaint or similar pleading;

    (b)  return of an indictment, information or similar document (in the case of a criminal proceeding); or

    (c)  receipt or filing of a notice of charges;

(3)  arbitration proceeding commenced against an **Insured** by service of a demand for arbitration;

(4)  formal civil, criminal, administrative or regulatory investigation of an **Insured Person**, which is commenced by the filing or issuance of a notice of charges, Wells Notice, formal investigative order or similar document identifying such **Insured Person** as a person against whom a proceeding identified in paragraphs (2) or (3) above may be commenced;

(5)  written request to toll or waive the applicable statute of limitations, or to waive any contractual time bar, relating to a potential **Claim** against an **Insured** for a **Wrongful Act;**

(6)  **Derivative Demand**, solely under Insuring Agreement D.; or

(7)  official request for **Extradition** of any **Insured Person**, or the execution of a warrant for the arrest of any **Insured Person** where such execution is an element of **Extradition.**

A **Claim** shall be deemed first made when any **Insured** first receives notice of the **Claim.**

C.  **"Crisis Event"** means an event that, in the absence of **Crisis Management Services** and in the good faith opinion of an **Executive** of the **Named Insured**, has resulted in or may result in:

(1)  **Loss** for which coverage would be provided under this Coverage Section; and

(2)  Significant adverse media coverage for the **Company.**

A **Crisis Event** will include the following, so long as the requirements set forth in paragraphs C.(1) and C.(2) above are met:

(a) Mass Tort:
The public announcement or accusation that the **Company** has caused the bodily injury, sickness, disease, death or emotional distress of a group of persons, or widespread damage to or destruction of property, including the loss of use thereof.

(b) Debt Default:
The public announcement that the **Company** has defaulted or intends to default on its debt, or intends to engage in a debt restructuring.

(c) Bankruptcy:
The public announcement that the **Company** intends to file for bankruptcy protection or that a third party is seeking to file for involuntary bankruptcy on behalf of the **Company**; or the imminence of bankruptcy proceedings, whether voluntary or involuntary.

(d) Loss of Key **Executives**; Loss of **Employees**:
The public announcement of the death or resignation of one or more key **Executives** of the **Company**; or a substantial lay-off of **Employees** of the **Company** (i.e., the elimination of multiple jobs within the **Company** without regard to employee performance, when the **Company** is experiencing financial difficulties).

(e) Regulatory Crisis:
The public announcement of the commencement, or threat of commencement, of litigation, administrative or other proceedings against the **Company** by any federal, state or local governmental or regulatory body.

D.  "**Crisis Management Services**" means those services performed by a firm that is either listed in an Endorsement to this Policy, or which the **Insurer** at its sole discretion has provided prior written approval for the **Company** to retain, to advise the **Company** on minimizing potential harm to the **Company's** reputation or financial condition from a covered **Crisis Event**, by maintaining and restoring public confidence in the **Company**.

E.  "**Defense Costs**" means:

(1) reasonable and necessary fees, costs, charges or expenses resulting from the investigation, defense or appeal of a **Claim**;

(2) premium for an appeal, attachment or similar bond, but without any obligation to apply for and obtain such bond, in connection with a **Claim**; or

(3)     any fees, costs, charges or expenses incurred by the **Insured** at the specific written request of the **Insurer** to assist the **Insurer** in the investigation, defense or appeal of a **Claim**.

"**Defense Costs**" does not include: (a) amounts incurred by the **Insured** prior to the date a **Claim** is first made and reported to the **Insurer**; or (b) compensation or benefits of any **Insured Person** or any overhead expenses of the **Company**.

F.      "**Derivative Costs**" means the reasonable and necessary fees, costs, charges, or expenses incurred by the **Company**, its board of directors or any committee of its board of directors, solely in response to a **Derivative Demand** and do not include any settlements, judgments or damages, nor any compensation or benefits of any **Insured Persons**, or any overhead expenses of the **Company**. **Derivative Costs** shall be reimbursed by the **Insurer** within sixty (60) days after the **Company** provides written notice to the **Insurer** of its final decision to bring, or not to bring, a civil proceeding against an **Executive**.

G.      "**Derivative Demand**" means a written demand by one or more shareholders of the **Company** upon the **Company's** Board of Directors, to bring a civil proceeding on behalf of the **Company** against an **Executive** for a **Wrongful Act**.

H.      "**Employee**" means any:

(1)     person who was, now is, or shall become a full-time, part-time, seasonal, or temporary employee of the **Company**, other than an **Executive**, but only while that person is acting in their capacity as such;

(2)     person leased to the **Company** or any **Independent Contractor**, so long as this person is working solely for the **Company** and only for conduct within his or her duties as such, if the **Company** indemnifies such leased person or **Independent Contractor** in the same manner as the **Company's** employees described in paragraph (1); and

(3)     volunteer whose labor and service is engaged and directed by the **Company**, but only while that person is acting in their capacity as such.

I.      "**Executive**" means any:

(1)     past, present or future duly elected or appointed director, officer, trustee, trustee emeritus, governor, management committee member or member of the board of managers of the **Company**;

(2)     with respect to any **Company** organized and operating in a foreign jurisdiction, any person in a position that is functionally equivalent to any executive position listed in paragraph (1) above; or

(3)     past, present or future General Counsel or Risk Manager of the **Company**, or any person in a position that is functionally equivalent within the **Company**.

J.     **"Extradition"** means any formal process by which an **Insured Person** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation.

K.     **"Financial Impairment"** means the **Company** becoming a debtor-in-possession; or the appointment of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate the **Company**; or the filing of a petition under the bankruptcy laws of the United States of America or any equivalent event outside the United States of America.

L.     **"Independent Contractor"** means any natural person working in the capacity of an independent contractor pursuant to a written contract or agreement between the **Independent Contractor** and the **Company**, which specifies the terms of the **Company's** engagement of the **Independent Contractor**.

M.     **"Insured"** means the **Company** and any **Insured Person**.

N.     **"Insured Person"** means any:

    (1)     **Executive**;

    (2)     **Employee**; or

    (3)     **Outside Entity Insured Person**.

O.     **"Loss"** means:

    (1)     damages, settlements or judgments;

    (2)     pre-judgment or post-judgment interest;

    (3)     costs or fees awarded in favor of the claimant;

    (4)     punitive or exemplary damages, or the multiple portion of any multiplied damages award, subject to any applicable Sublimit of Liability, but only to the extent that such damages are insurable under the applicable law most favorable to the insurability of such damages;

    (5)     **Derivative Costs**, solely under Insuring Agreement D.;

    (6)     **Response Costs**, solely under Insuring Agreement E.; and

    (7)     **Defense Costs**.

    **"Loss"** does not include:

        (a)     amounts for which the **Insureds** are not legally liable;

        (b)     amounts which are without legal recourse to the **Insureds**;

        (c)     taxes;

(d)       fines or penalties, except as provided for in Definition O.(4) above;

(e)       amounts deemed uninsurable under applicable law;

(f)       costs or liability incurred by any **Insured** to modify any building or property to make it more accessible or accommodating to any disabled person, or in connection with any educational, sensitivity or other corporate program, policy or seminar; or

(g)       amounts paid or incurred by the **Company** to comply with a judgment or settlement for non-monetary or injunctive relief.

However, this Coverage Section shall provide coverage for **Defense Costs** incurred in a **Claim** seeking amounts specified in paragraphs (a) through (g) above, subject to all other terms, conditions and exclusions of this Policy.

P.    **"Outside Entity"** means:

(1)       any not-for-profit entity; or

(2)       any other entity listed as such by Endorsement attached to this Policy;

for which an **Executive** or **Employee** acts as a director, officer, trustee, trustee emeritus, governor, management committee member or member of the board of managers or the equivalent thereof, at the specific request of the **Company**. Any such person shall be referred to herein as an **"Outside Entity Insured Person,"** but only while that person is acting in their capacity as a director, officer, trustee, trustee emeritus or governor, or the equivalent thereof, of an **Outside Entity**.

Q.    **"Response Costs"** means the following amounts incurred by the **Company** solely as a result of a **Crisis Event**:

(1)       amounts for the reasonable and necessary fees and expenses incurred by a firm described in Definition D. in the performance of **Crisis Management Services** for the **Company**; and

(2)       amounts for reasonable and necessary printing, advertising, mailing of materials, or travel by directors, officers, employees or agents of the **Company** or a firm described in Definition D., incurred at the direction of such.

R.    **"Securities Claim"** means a **Claim** alleging a violation of any foreign, federal, state or local regulation, rule, statute or common law regulating securities, including, but not limited to, the purchase or sale, or offer or solicitation of an offer to purchase or sell securities which is:

(1)       brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale, or offer or solicitation of an offer to purchase or sell, any securities of the **Company**;

(2)    brought by a security holder of the **Company** with respect to such security holder's interest in securities of such **Company**; or

(3)    brought derivatively on behalf of the **Company** by a security holder of such **Company**.

The **Insurer** shall not assert that a **Loss** incurred in a **Securities Claim** alleging violations of Section 11 or 12 of the Securities Act of 1933, as amended, constitutes uninsurable loss.

S.    **"Wrongful Act"** means:

(1)    with respect to an **Insured Person**, any actual or alleged act, error, omission, neglect, breach of duty, breach of trust, misstatement, or misleading statement by an **Insured Person** in his or her capacity as such, or any matter claimed against an **Insured Person** by reason of his or her status as such;

(2)    with respect to an **Outside Entity Insured Person**, any actual or alleged act, error, omission, neglect, breach of duty, breach of trust, misstatement, or misleading statement by a person in his or her capacity as an **Outside Entity Insured Person** or any matter claimed against such **Outside Entity Insured Person** by reason of his or her status as such; or

(3)    with respect to the **Company**, any actual or alleged act, error, omission, neglect, breach of duty, misstatement or misleading statement by the **Company**.

## III.    EXCLUSIONS

This Coverage Section shall not cover any **Loss** in connection with any **Claim**:

A.    arising out of, based upon or attributable to the gaining of any profit or financial advantage or improper or illegal remuneration by an **Insured**, if a final judgment or adjudication establishes that such **Insured** was not legally entitled to such profit or advantage or that such remuneration was improper or illegal;

B.    arising out of, based upon or attributable to any deliberate criminal or deliberate fraudulent act or any wilful violation of law by an **Insured**, if a final judgment or adjudication establishes that such act or violation occurred;

C.    arising out of, based upon or attributable to the purchase or sale by an **Insured** of securities of the **Company** within the meaning of Section 16(b) of the Securities Exchange Act of 1934 and any amendments thereto or similar provisions of any state statutory law if a final judgment or adjudication establishes that such violation occurred;

In determining the applicability of Exclusions A., B. and C., the facts pertaining to, the knowledge possessed by, or any **Wrongful Act** committed by, any **Insured Person** shall not be imputed to any other **Insured Person**; however, the facts pertaining to, the knowledge possessed by, or any **Wrongful Act** committed by, an **Insured Person** who is a past or current Chairman of the Board, Chief Executive Officer, President or Chief Financial Officer of the **Company** shall be imputed to the **Company**.

D.     based upon, arising from, or in consequence of any actual or alleged liability of any **Insured** under any express contract or agreement; provided however, that this Exclusion shall not apply: (1) to the extent that such **Insured** would have been liable in the absence of such contract or agreement; or (2) to the payment of **Defense Costs** in any such **Claim** against an **Insured Person**.

E.     alleging, arising out of, based upon or attributable to, as of the Pending or Prior Date set forth in Item 5. of the Declarations with respect to this Coverage Section, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation, of which an **Insured** had notice, including any **Claim** alleging or derived from the same or essentially the same facts, or the same or related **Wrongful Acts**, as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

F.     alleging, arising out of, based upon or attributable to the same or essentially the same facts alleged, or to the same or related **Wrongful Acts** alleged or contained, in any **Claim** which has been reported, or in any circumstances of which notice has been given, before the Inception Date of this Policy as set forth in Item 2. of the Declarations, under any policy, whether excess or underlying, of which this Policy is a renewal or replacement or which it may succeed in time;

G.     alleging, arising out of, based upon or attributable to any actual or alleged act or omission of any **Insured Person** serving in any capacity other than as an **Executive** or an **Employee** or as an **Outside Entity Insured Person**;

H.     brought by an **Outside Entity** or by any director, officer, trustee or governor thereof against an **Outside Entity Insured Person** serving for such **Outside Entity**; or which is brought by any security holder of the **Outside Entity**, whether directly or derivatively, unless such security holder's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, the **Outside Entity**, any director, officer, trustee or governor thereof, an **Executive** or the **Company**; provided however, that this Exclusion shall not apply to:

    (1)     any **Claim** brought by any director, officer, trustee or governor of an **Outside Entity** in the form of a cross-claim or third-party claim for contribution or indemnity which is part of, and results directly from, a **Claim** which is not otherwise excluded under the terms of this Coverage Section;

    (2)     any **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, receiver or similar official for the **Outside Entity** or any assignee of such trustee, examiner, receiver or similar official;

(3)      any **Claim** brought by any director, officer, trustee or governor of an **Outside Entity** who has not served in such capacity, nor acted as a consultant to the **Outside Entity**, for at least three (3) years prior to such **Claim** being first made;

(4)      any **Claim** brought by any director, officer, trustee or governor of an **Outside Entity** formed and operating in a foreign jurisdiction, against any **Outside Entity Insured Person** serving for such **Outside Entity**, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof); or

(5)      any **Claim** brought against an **Outside Entity Insured Person** arising out of or based upon the violation of any foreign, federal, state or local law providing protection for whistleblowers;

I.      brought by or on behalf of any **Insured**, other than an **Employee** of a **Company** provided however, that this Exclusion shall not apply to:

(1)      any **Claim** brought by an **Insured Person** that is in the form of a cross-claim or third-party claim for contribution or indemnity which is part of, and results directly from, a **Claim** which is not otherwise excluded under the terms of this Coverage Section;

(2)      a shareholder derivative action, but only if such action is brought and maintained without the solicitation, approval, assistance, active participation or intervention of any **Insured** or any **Affiliate** thereof;

(3)      any **Claim** brought by any **Executive** who has not served in such capacity, nor has acted as a consultant to the **Company**, for at least three (3) years prior to the **Claim** being first made;

(4)      any **Claim** brought against an **Insured Person** arising out of or based upon the violation of any foreign, federal, state or local law providing protection for whistleblowers;

(5)      any **Claim** brought by any **Executive** of a **Company** formed and operating in a foreign jurisdiction, against such **Company** or any **Insured Person** thereof, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof); or

(6)      any **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, receiver or similar official for the **Company** or any assignee of such trustee, examiner, receiver or similar official;

J.    for any actual or alleged violation of the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and any amendments thereto, or any similar foreign, federal or state statutory or common law;

K.    alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, any public offering of securities by the **Company** or an **Outside Entity**, or alleging a purchase or sale of such securities subsequent to such public offering; provided, however, that this Exclusion shall not apply to:

(1)    any purchase or sale of securities exempted pursuant to Section 3(b) of the Securities Act of 1933. Coverage for such purchase or sale transaction shall be conditioned solely upon the **Company** giving the **Insurer** written notice of any such public offering, including all details hereof, as soon as practicable, but not later than thirty (30) days after the effective date of such offering; or

(2)    any public offering of securities, other than an offering described in paragraph (1) above, as well as any purchase or sale of securities subsequent to such public offering. Coverage for such transaction shall be conditioned upon, within thirty (30) days prior to the effective time of such public offering, the **Company**:

(a)    giving the **Insurer** written notice of such offering, including all details thereof, and any underwriting information required by the **Insurer**; and

(b)    accepting such terms, conditions and additional premium required by the **Insurer** for such coverage.

Coverage provided pursuant to this paragraph (2) is also subject to the **Company** paying such additional premium when due. The **Insurer** shall provide the **Company** with a quote for such coverage if the **Company** gives written notice of the offering as required in this paragraph; or

(3)    any **Claim** for **Loss** alleging a **Wrongful Act** which occurred during the **Insured's** preparations to commence an initial public offering ("IPO") and which occurred at any time prior to 12:01 a.m. on the date the **IPO** commences ("**IPO Effective Time**"), including any **Claim** for **Loss** alleging a **Wrongful Act** which occurred during the road show; provided, however that the coverage otherwise afforded under this paragraph (3) shall be deemed to be void *ab initio* effective the **IPO Effective Time**; provided further, however, that coverage shall not be deemed void *ab initio* if (a) the **Claim** is first made and reported prior to the **IPO Effective Time**, and (b) a public company directors and officers liability policy is not applicable to such **Claim**;

L.    alleging, arising out of, based upon or attributable to, the adequacy or inadequacy of the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all of the ownership interest in or assets of any entity; provided however, that this Exclusion shall not apply to the payment of **Defense Costs** incurred in the defense of any such **Claim**;

M.    for bodily injury, sickness, mental anguish, emotional distress, disease or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof; or for libel, slander, oral or written publication of defamatory or disparaging material or violation of any right of privacy; provided however, that this Exclusion shall not apply to a **Securities Claim**;

N.    alleging, arising out of, based upon, or attributable to any actual or alleged discrimination, harassment, retaliation, wrongful discharge, termination or any other employment-related or employment practice claim, including but not limited to any wage-hour claim or any third-party discrimination or harassment claim; provided however, that this Exclusion shall not apply to any **Securities Claim**;

O.    alleging, arising out of, based upon or attributable to any obligation pursuant to any worker's compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law;

P.    alleging, arising out of, based upon, or attributable to, or in consequence of any actual or alleged plagiarism, infringement or violation of any copyright, patent, trademark or service mark or the misappropriation of intellectual property, ideas or trade secrets; provided however, that this Exclusion shall apply only to a **Claim** against the **Company** under Insuring Agreement C.

## IV.   RETENTION

No Retention amount is applicable to **Claims** for which coverage is provided under Insuring Agreements A. or F. of this Coverage Section.

## V.   DEFENSE AND SETTLEMENT OF A CLAIM

A.    The **Insurer** does not assume any duty to defend any **Claim** under this Coverage Section. However, the **Insurer** shall have the right to fully and effectively associate with the **Insured** in the control, investigation, defense and settlement of any **Claim**.

B.    The **Insured(s)** shall defend and contest any **Claim** made against them. The **Insured** shall obtain the **Insurer's** written consent in the selection of defense counsel to represent the **Insured** with respect to any **Claim**, such consent shall not be unreasonably withheld.

C.   The **Insured(s)** shall not admit or assume any liability, incur any **Defense Costs**, make any settlement offer, enter into any settlement agreement or stipulate to any judgment without the prior written consent of the **Insurer**. Any **Loss** incurred by the **Insured(s)** and/or any settlements or judgments agreed to by the **Insured(s)** without such consent shall not be covered by this Policy. However, the **Insurer's** consent is not required for the **Insured** to settle a **Claim** for a **Loss** amount within the applicable Retention, provided that such settlement fully resolves the **Claim** with respect to all **Insureds** and the **Insurer**.

D.   At the request of the **Named Insured**, the **Insurer** shall reimburse **Defense Costs** prior to the final disposition of any **Claim**, subject to all other terms and conditions of this Policy. In the event and to the extent that the **Insureds** shall not be entitled to payment of such **Defense Costs** under the terms and conditions of this Coverage Section, such payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds**, severally and according to their respective interests.

E.   **Right to Tender Defense**

(1)   Notwithstanding the foregoing, the **Insureds** shall have the right to tender the defense of a **Claim** to the **Insurer**.

(2)   This right shall be exercised by the **Named Insured** on behalf of all **Insureds** by providing written notice to the **Insurer**, except in the event that coverage is provided for a **Claim** exclusively against an **Insured Person**. Such **Insured Person** shall have the right to tender the defense of the **Claim** to the **Insurer** at his or her option. The **Insured's** right to tender the defense of a **Claim** shall terminate if it is not exercised within thirty (30) days of the date the **Claim** is first made against an **Insured**. Further, from the date the **Claim** is first made against an **Insured** to the date when the **Insurer** accepts the tender of the defense of such **Claim**, the **Insureds** shall take no action, or fail to take any required action, that prejudices the rights of any **Insured** or the **Insurer** with respect to such **Claim**. In the event the **Insureds** have complied with all of the foregoing, the **Insurer** shall be obligated to assume the defense of the **Claim**, even if such **Claim** is groundless, false or fraudulent.

(3)   The **Insurer's** assumption of the defense of the **Claim** shall be effective upon the **Insurer** providing written confirmation thereof to the **Named Insured**. Once the defense has been so tendered, the **Insured** shall have the right to effectively associate with the **Insurer** in the defense and the negotiation of any settlement of the **Claim**, subject to the provisions of this Section V. The **Insurer** shall not be obligated to defend or continue to defend a **Claim**, or to pay or reimburse **Defense Costs**, after the applicable Limit of Liability has been exhausted.

(4)   When the **Insurer** has assumed the duty to defend, it shall have the right to investigate and conduct negotiations and, with the **Insured's** consent, which shall not be unreasonably withheld, enter into the settlement of any **Claim** that the **Insurer** deems appropriate.

(5)   When the **Insurer** has assumed the duty to defend, it shall pay **Defense Costs** excess of the applicable Retention, subject to all other terms and conditions of this Policy. In the event and to the extent that the **Insureds** shall not be entitled to payment of such **Defense Costs** under the terms and conditions of this Coverage Section, such payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds**, severally and according to their respective interests.

Coverage Section V. shall not apply to **Crisis Event Coverage**.

## VI.   COOPERATION

Each and every **Insured** shall give the **Insurer** full cooperation and such information as it may reasonably require relating to the defense and settlement of any **Claim** and the prosecution of any counterclaim, cross-claim or third-party claim, including without limitation the assertion of an **Insured's** indemnification or contribution rights.

## VII.   REPRESENTATIONS AND SEVERABILITY

A.   In granting coverage under this Policy, it is agreed that the **Insurer** has relied upon the statements and representations contained in the **Application**. All such statements and representations shall be deemed to be the basis of this Policy and are to be considered as incorporated into this Policy.

B.   The **Insureds** agree that in the event that any such statement or representation which is material to the coverage provided hereunder is not accurate and complete, then no coverage shall be available under this Policy with respect to any of the following **Insureds**:

(1)   an **Insured Person** who knew as of the Inception Date set forth in Item 2. of the Declarations, of the facts that were not accurately and completely disclosed in the **Application**;

(2)   a **Company**, under Insuring Agreement B., to the extent it indemnifies an **Insured Person** referenced in paragraph (1) above; and

(3)   a **Company**, under Insuring Agreement C., if any **Insured Person** who is a past or current Chief Executive Officer, Chief Financial Officer or President, knew as of the Inception Date set forth in Item 2. of the Declarations, of the facts that were not accurately and completely disclosed in the **Application**, whether or not such individual knew that such facts were not accurately and completely disclosed in the **Application**.

C.   Solely with respect to Insuring Agreement A. and B. of this Coverage Section, under no circumstances shall the coverage provided thereunder be deemed void, whether by rescission or otherwise, but such coverage will be subject to all other terms, conditions and exclusions of this Policy.

D.   It is understood and agreed that this Section VII. supercedes any inconsistent language contained in the **Application**.

## VIII.   ORDER OF PAYMENTS

A.   In the event of **Loss** arising from any **Claim** for which payment is due under the provisions of this Coverage Section, but which **Loss**, in the aggregate, exceeds the remaining available Limit of Liability applicable to this Coverage Section, then the **Insurer** shall:

(1)   first, pay such **Loss** for which coverage is provided under Insuring Agreement A. of this Coverage Section;

(2)   then, with respect to whatever remaining amount of the applicable Policy Aggregate Limit of Liability is available after payment of such **Loss**, pay such **Loss** for which coverage is provided under Insuring Agreement B. of this Coverage Section, and

(3)   then, pay such **Loss** for which coverage is provided under Insuring Agreements C., D. or E. of this Coverage Section.

B.   In the event of **Loss** arising from a **Claim** for which payment is due under the provisions of this Coverage Section (including those circumstances described in paragraph A. of this Section VIII.), the **Insurer** shall, at the written request of the **Named Insured**:

(1)   first pay such **Loss** for which coverage is provided under Insuring Agreement A. of this Coverage Section;

(2)   then, either pay or hold payment for such **Loss** for which coverage is provided under Insuring Agreements B., C., D. or E. of this Coverage Section.

In the event that the **Insurer** withholds payment under Insuring Agreements B., C., D. or E. of this Coverage Section pursuant to the above request, then the **Insurer** shall at any time in the future, at the request of the **Named Insured**, release such **Loss** payment to the **Company**, or make such **Loss** payment directly to the **Insured Person** in the event of covered **Loss** under any **Claim** covered under Insuring Agreement A. of this Coverage Section.

C.   The **Financial Impairment** of any **Company** or any **Insured Person** shall not relieve the **Insurer** of any of its obligations to prioritize payment of covered **Loss** under this Coverage Section pursuant to this Section VIII.

## DARWIN NATIONAL ASSURANCE COMPANY

# FORCEFIELD℠
## PRIVATE COMPANY
### MANAGEMENT LIABILITY PACKAGE POLICY
### Employment Practices Liability Coverage Section

In consideration of the payment of the premium and in reliance upon the **Application**, which shall be deemed to be attached to, incorporated into, and made a part of this Policy, and subject to the General Terms and Conditions and this Coverage Section, DARWIN NATIONAL ASSURANCE COMPANY (the "**Insurer**") and the **Named Insured**, on behalf of all **Insureds**, agree as follows:

**I.     INSURING AGREEMENTS**

    **A.     Employment Practices Liability Coverage**

        The **Insurer** shall pay on behalf of any **Insured** the **Loss** arising from a **Claim**, first made during the **Policy Period** (or Discovery Period, if applicable) against such **Insured** for any **Wrongful Act**, and reported to the **Insurer** in accordance with Section V. of the General Terms and Conditions and Section IV. of this Coverage Section.

    **B.     Third Party Liability Coverage**

        The **Insurer** shall pay on behalf of any **Insured** the **Loss** arising from a **Claim** for a **Third Party Wrongful Act** first made during the **Policy Period** (or Discovery Period, if applicable) against such **Insured**, and reported to the **Insurer** in accordance with Section V. of the General Terms and Conditions and Section IV. of this Coverage Section.  The applicable Sublimit of Liability set forth in Item 4.A. of the Declarations is the **Insurer's** maximum Limit of Liability for all **Loss** arising from all **Claims** for **Third Party Wrongful Acts**. The Sublimit of Liability for **Claims** for **Third Party Wrongful Acts** shall be part of, and not in addition to, the Limit of Liability applicable to this Coverage Section, set forth in Item 4.A. of the Declarations.

**II.    DEFINITIONS**

    **A.     "Benefits"** means perquisites, fringe benefits, deferred compensation or payments (including insurance premiums) in connection with any employee-related plan.  **Benefits** shall not include salary, wages, bonuses or non-deferred cash incentive compensation.

    **B.     "Claim"** means any:

        (1)     written demand for monetary, non-monetary or injunctive relief made against an **Insured**;

(2)    judicial, administrative or regulatory proceeding, whether civil or criminal, for monetary, non-monetary or injunctive relief, commenced against an **Insured**, including any appeal therefrom, which is commenced by:

    (a)    service of a complaint or similar pleading;

    (b)    return of an indictment or similar document (in the case of a criminal proceeding); or

    (c)    receipt or filing of a notice of charges;

(3)    arbitration proceeding commenced against an **Insured** by service of a demand for arbitration;

(4)    notification of an investigation of an **Insured** by the Equal Employment Opportunity Commission ("EEOC") or similar governmental agency commenced by the filing of a notice of charges, formal investigative order or similar document;

(5)    audit of an **Insured** conducted by the United States of America Office of Federal Contract Compliance Programs ("OFCCP"), but only if commenced by the receipt of a notice of violation, order to show cause, or a written demand for monetary or non-monetary or injunctive relief; or

(6)    written request to toll or waive the applicable statute of limitations, or to waive any contractual time-bar, relating to a potential **Claim** against an **Insured** for a **Wrongful Act**.

**Claim** shall not include any labor grievance, arbitration or other proceeding pursuant to a collective bargaining agreement.

A **Claim** shall be deemed first made when any **Insured** first receives notice of the **Claim**.

C.    **"Defense Costs"** means:

(1)    reasonable and necessary fees, costs, charges or expenses resulting from the investigation, defense or appeal of a **Claim**;

(2)    premium for an appeal, attachment or similar bond in connection with a **Claim**, but without any obligation to apply for and obtain such bond, or

(3)    any fees, costs, charges or expenses incurred by the **Insured** at the specific written request and direction of the **Insurer**, to assist the **Insurer** in the investigation, defense or appeal of a **Claim**.

**"Defense Costs"** do not include: (a) amounts incurred prior to the date a **Claim** is first made and reported to the **Insurer**; or (b) compensation or benefits of any **Insured Person** or any overhead expenses of the **Company**.

D.   **"Discrimination"** means any violation of employment discrimination laws, including but not limited to any actual, alleged or constructive employment termination, dismissal, or discharge, employment demotion, denial of tenure, modification of any term or condition of employment, any failure or refusal to hire or promote, or any limitation or segregation of any **Employee** or applicant for employment by the **Company** in any way that would deprive any person of employment opportunities based on such person's race, color, religion, creed, age, sex, disability, marital status, national origin, pregnancy, HIV status, sexual orientation or preference, veteran status or any other status that is protected pursuant to any foreign, federal, state, or local statutory law or common law.

E.   **"Employee"** means any:

(1)   person who was, now is, or shall become a full-time, part-time, seasonal, or temporary employee of the **Company,** but only while that person is acting in their capacity as such;

(2)   person leased to the **Company** or any **Independent Contractor** so long as this person is working solely for the **Company** and only for conduct within his or her duties as such, but only if the **Company** indemnifies such leased person or **Independent Contractor** in the same manner as the **Company's** employees; and

(3)   volunteer whose labor and service is engaged and directed by the **Company**, but only while that person is acting in the capacity as such.

F.   **"Executive"** means any:

(1)   past, present or future duly elected or appointed director, officer, trustee, trustee emeritus, governor, management committee member or member of the board of managers of the **Company**; or

(2)   past, present or future person in a duly elected or appointed position in an entity which is organized and operated in a foreign jurisdiction that is functionally equivalent to an executive position listed in paragraph (1) above.

G.   **"Harassment"** means:

(1)   sexual harassment, including unwelcome sexual advances, requests for sexual favors, or other conduct of a sexual nature that is made a condition of employment with, used as a basis for employment decisions by, interferes with performance or creates an intimidating, hostile or offensive working environment within the **Company** or **Outside Entity**; or

(2)   workplace harassment, including work-related harassment of a non-sexual nature that interferes with performance or creates an intimidating, hostile or offensive working environment within the **Company** or **Outside Entity**.

H.   **"Independent Contractor"** means any natural person working in the capacity of an independent contractor pursuant to a written contract or agreement between the **Independent Contractor** and the **Company** which specifies the terms of the **Company's** engagement of the **Independent Contractor**.

I.   **"Insured"** means the **Company** and any **Insured Person**.

J.   **"Insured Person"** means any:

   (1)   **Executive**;

   (2)   **Employee**; or

   (3)   **Outside Entity Insured Person**.

K.   **"Loss"** means:

   (1)   damages (including back pay and front pay), settlements or judgments;

   (2)   pre-judgment or post-judgment interest;

   (3)   costs or fees awarded in favor of the claimant;

   (4)   punitive or exemplary damages, or the multiple portion of any multiplied damages award, subject to any applicable Sublimit of Liability (including the multiple or liquidated damages awarded pursuant to the Age Discrimination in Employment Act or Equal Pay Act), but only to the extent such damages are insurable under the applicable law most favorable to the insurability of such damages; and

   (5)   **Defense Costs**.

   **"Loss"** does not include:

   (a)   amounts for which the **Insureds** are not legally liable;

   (b)   amounts which are without legal recourse to the **Insureds**;

   (c)   taxes;

   (d)   fines or penalties, except as provided for in Definition K.(4) above;

   (e)   amounts deemed uninsurable under applicable law;

   (f)   any costs or liability incurred by any **Insured** to modify any building or property to make it more accessible or accommodating to any disabled person, or in connection with any educational, sensitivity or other corporate program, policy or seminar;

(g)      **Stock Benefits** due or to become due or the equivalent value of such **Stock Benefits**; or

(h)      any future compensation, including any **Benefits**, for any person hired, promoted or reinstated pursuant to a judgment, settlement, order or other resolution of a **Claim**.

However, this Coverage Section shall provide coverage for **Defense Costs** incurred in a **Claim** seeking amounts specified in paragraphs (a) through (h) above, subject to all other terms, conditions and exclusions of this Policy.

L.      **"Outside Entity"** means:

(1)      any not-for-profit entity; or

(2)      any other entity listed as such by Endorsement attached to this Policy;

for which an **Executive** or **Employee** of the **Company** acts as a director, officer, trustee, trustee emeritus, governor, management committee member or member of the board of managers or the equivalent thereof, at the specific request of the **Company**. Any such person shall be referred to herein as an **"Outside Entity Insured Person,"** but only while that person is acting in the capacity as a director, officer, trustee or governor, or the equivalent thereof, of an **Outside Entity**.

M.      **"Retaliation"** means retaliatory treatment of an **Employee** or an employee of an **Outside Entity** alleged to be on account of such individual:

(1)      exercising his or her rights under law, including rights under worker's compensation laws, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights;

(2)      refusing to violate any law or opposing any unlawful practice;

(3)      having assisted or testified in or cooperated with any legal proceeding or formal governmental investigation regarding alleged violations of law by any **Insured**;

(4)      disclosing or expressing an intent to disclose to a superior or to any governmental agency any alleged violations of law; or

(5)      filing or expressing an intent to file any claim against the **Company** or **Outside Entity** under the Federal False Claims Act or any other similar foreign, federal, state, or local "whistle blower" law.

N.      **"Stock Benefits"** means any offering, plan or agreement between the **Company** and any **Insured Person** thereof, which grants stock or stock options or stock appreciation rights to such individual, including but not limited to stock options, restricted stock or any other stock grant, but not including employee stock ownership plans or employee stock purchase plans.

O.   **"Third Party"** means any natural person who is a customer, vendor, service provider or other business invitee of the **Company**. **Third Party** shall not include any **Insured Person** or any applicant for employment with the **Company** or an **Outside Entity**.

P.   **"Third Party Wrongful Act"** means any actual or alleged:

   (1)   discrimination against a **Third Party** based upon such **Third Party's** race, color, religion, creed, age, sex, disability, marital status, national origin, pregnancy, HIV status, sexual orientation or preference, veteran status or any other status that is protected pursuant to any foreign, federal, state, or local statutory law or common law; or

   (2)   harassment directed against a **Third Party**, including sexual harassment, unwelcome sexual advances, requests for sexual favors or other misconduct of a sexual nature.

Q.   **"Workplace Tort"** means any employment-related:

   (1)   misrepresentation, defamation (including libel and slander), false arrest, detention, imprisonment, invasion of privacy, negligent evaluation, wrongful discipline or wrongful deprivation of a career opportunity; or

   (2)   negligent retention, supervision, hiring or training, wrongful infliction of emotional distress, mental anguish or humiliation or failure to provide or enforce consistent employment-related corporate policies and procedures;

when alleged as part of a **Claim** for actual or alleged **Wrongful Employment Decision, Discrimination, Harassment, or Retaliation**.

R.   **"Wrongful Act"** means any actual or alleged:

   (1)   **Discrimination;**
   (2)   **Harassment;**
   (3)   **Retaliation;**
   (4)   **Workplace Tort**; or
   (5)   **Wrongful Employment Decision;**

committed by an **Insured** but only if alleged by or on behalf of an **Employee** or an applicant for employment with the **Company** or an **Outside Entity**.

**Wrongful Act** shall also include a **Third Party Wrongful Act** committed by an **Insured**, but solely with respect to the coverage provided under Insuring Agreement B. of this Coverage Section.

S.   **"Wrongful Employment Decision"** means any actual or alleged:

   (1)   wrongful termination, dismissal, or discharge of employment, demotion, denial of tenure, or failure or refusal to hire or promote; or

(2)   breach of any implied employment contract or obligation, including but not limited to any such obligation arising out of any personnel manual, employee handbook or policy.

## III.   EXCLUSIONS

This Coverage Section shall not cover any **Loss** in connection with any **Claim**:

A.   alleging, arising out of, based upon or attributable to any deliberate criminal or deliberate fraudulent act or any wilful violation of law by an **Insured** if a final judgment or adjudication establishes that such act or violation occurred;

In determining the applicability of Exclusion A., the facts pertaining to, the knowledge possessed by, or any **Wrongful Act** committed by, any **Insured Person** shall not be imputed to any other **Insured Person**; however, the facts pertaining to, the knowledge possessed by, or any **Wrongful Act** committed by, an **Insured Person** who is a past or current Chairman of the Board, Chief Executive Officer, President or Chief Financial Officer of the **Company** shall be imputed to the **Company**;

B.   alleging, arising out of, based upon or attributable to any actual or alleged liability of any **Insured** under any express contract or agreement; provided however, that this Exclusion shall not apply: (1) to the extent such liability which would have attached in the absence of such express contract or agreement; or (2) to the payment of **Defense Costs** in any such **Claim** against an **Insured Person**;

C.   alleging, arising out of, based upon or attributable to, as of the Pending or Prior Date set forth in Item 5. of the Declarations with respect to this Coverage Section, any pending or prior: (1)  litigation; or (2) administrative or regulatory proceeding or investigation, of which an **Insured** had notice, including any **Claim** alleging or derived from the same or essentially the same facts, or the same or related **Wrongful Acts**, as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

D.   alleging, arising out of, based upon or attributable to the same facts or essentially the same facts alleged, or to the same or related **Wrongful Act(s)** alleged or contained in any **Claim** which has been reported, or in any circumstances of which notice has been given, before the Inception Date of this Policy as set forth in Item 2. of the Declarations, under any policy, whether excess or underlying, of which this Policy is a renewal or replacement or which it may succeed in time;

E.   for any **Wrongful Act** arising out of any **Insured Person** serving as a director, officer,  trustee or governor of an **Outside Entity** if such **Claim** is brought by the **Outside Entity** or by any director, officer, trustee or governor thereof;

F.   for bodily injury, sickness, mental anguish, emotional distress, disease or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof; provided however, that this Exclusion shall not apply to that portion of a   **Claim** seeking damages for emotional distress or mental anguish when resulting from a **Wrongful Act** of an **Insured**;

G.    alleging, arising out of, based upon, attributable to or in any way relating to the refusal, failure or inability to pay wages or overtime pay for services rendered, improper classification of any **Employee**, improper payroll deductions taken from any **Employee** or purported **Employee,** or failure to provide or enforce legally required meal or rest break periods; provided however, that this Exclusion shall not apply to any **Claim** for **Retaliation;**

H.    for any actual or alleged violation of the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and any amendments thereto, or any similar foreign, federal, state or statutory law or common law; provided however, that this Exclusion shall not apply to any **Claim** for **Retaliation;**

I.    alleging, arising out of, based upon or attributable to any obligation pursuant to any worker's compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law; provided however, that this Exclusion shall not apply to any **Claim** for **Retaliation;**

J.    alleging, arising out of, based upon or attributable to any **Claim** brought by a securities holder of a **Company** or an **Outside Entity**, in their capacity as such;

K.    alleging, arising out of, based upon or attributable to any lockout, strike, picket line, hiring of replacement workers, or other similar actions in connection with labor disputes or labor negotiations; provided however, that this Exclusion shall not apply to any **Claim** for **Retaliation;**

L.    alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an **Insured Person** serving in any capacity, other than as an **Insured Person**.

## IV.    NOTICE OF A CLAIM

The following provision shall apply in lieu of Section V.A. of the General Terms and Conditions:

A.    The **Insured(s)** shall, as a condition precedent to the obligations of the **Insurer** under this Policy, give written notice to the **Insurer** at either the physical or email address indicated in Item 7. of the Declarations, of a **Claim** made against an **Insured** as soon as practicable after the **Company's** General Counsel, Director of Human Resources or Risk Manager, or any individual with functionally equivalent responsibilities, becomes aware of the **Claim**.

## V.    DEFENSE AND SETTLEMENT OF A CLAIM

A.    The **Insurer** does not assume any duty to defend any **Claim** under this Coverage Section. However, the **Insurer** shall have the right to fully and effectively

associate with the **Insured** in the control, investigation, defense and settlement of any **Claim**.

B.   The **Insured(s)** shall defend and contest any **Claim** made against them.   The **Insured** shall obtain the **Insurer's** written consent in the selection of defense counsel to represent the **Insured** as respects any **Claim**, such consent shall not be unreasonably withheld.

C.   The **Insured(s)** shall not admit or assume any liability, incur any **Defense Costs**, make any settlement offer, enter into any settlement agreement or stipulate to any judgment, without the prior written consent of the **Insurer**. Any **Loss** incurred by the **Insured(s)** and/or any settlements or judgments agreed to by the **Insured(s)** without such consent shall not be covered by this Policy. However, the **Insurer's** consent is not required for the **Insured** to settle a **Claim** for a **Loss** amount within the applicable Retention, provided that such settlement fully resolves the **Claim** with respect to all **Insureds** and the **Insurer**.

D.   The **Insurer** shall have the right to associate with the **Insured** in the defense of any **Claim** that can reasonably be expected to require any payment by the **Insurer**, including but not limited to the right to investigate, conduct negotiations, and enter into the settlement of any **Claim** that the **Insurer** deems appropriate, subject to the consent of the **Insured** which shall not be unreasonably withheld.   In the event the **Insured** refuses to consent to a settlement acceptable to the claimant in accordance with the **Insurer's** recommendation, the **Insurer's** liability for **Loss** on account of such **Claim** shall not exceed:

(a)   the amount for which the **Insurer** could have settled the **Claim**; plus;

(b)   any **Defense Costs** incurred up to the date the **Insured** refused to settle such **Claim**; plus

(c)   eighty percent (80%) of covered **Loss**, other than **Defense Costs**, in excess of the amount for which the **Insurer** could have settled the **Claim**.   The remaining amount of any **Loss**, including any **Defense Costs** incurred after the date the **Insured** refused to settle such **Claim**, shall be carried by the **Insured** at its own risk and be uninsured.

However, in no event shall the **Insurer's** liability exceed the applicable Limit of Liability for this Coverage Section, as set forth in Item 4.A. of the Declarations.

E.   At the request of the **Named Insured**, the **Insurer** shall reimburse **Defense Costs** prior to the final disposition of any **Claim**, subject to all other terms and conditions of this Policy. In the event and to the extent that the **Insureds** shall not be entitled to payment of such **Defense Costs** under the terms and conditions of this Coverage Section, such payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds**, severally, according to their respective interests.

F.   **Right to Tender Defense**

(1)     Notwithstanding the foregoing, the **Insureds** shall have the right to tender the defense of a **Claim** to the **Insurer**.

(2)     This right shall be exercised by the **Named Insured** on behalf of all **Insureds** by providing written notice to the **Insurer**. The **Insured's** right to tender the defense of a **Claim** shall terminate if it is not exercised within fifteen (15) days of the date the **Claim** is first made against an **Insured**. Further, from the date the **Claim** is first made against an **Insured** to the date when the **Insurer** accepts the tender of the defense of such **Claim**, the **Insureds** shall take no action, or fail to take any required action, that prejudices the rights of any **Insured** or the **Insurer** with respect to such **Claim**. In the event the **Insureds** have complied with all of the foregoing, the **Insurer** shall be obligated to assume the defense of the **Claim**, even if such **Claim** is groundless, false or fraudulent.

(3)     The **Insurer's** assumption of the defense of the **Claim** shall be effective upon the **Insurer** providing written confirmation thereof to the **Named Insured**. Once the defense has been so tendered, the **Insured** shall have the right to effectively associate with the **Insurer** in the defense and the negotiation of any settlement of any **Claim**, subject to the provisions of this Section V. The **Insurer** shall not be obligated to defend or continue to defend a **Claim**, or to pay or reimburse **Defense Costs**, after the applicable Limit of Liability has been exhausted.

(4)     When the **Insurer** has assumed the duty to defend, it shall pay **Defense Costs** excess of the applicable Retention, subject to all other terms and conditions of this Policy. In the event and to the extent that the **Insureds** shall not be entitled to payment of such **Defense Costs** under the terms and conditions of this Coverage Section, such payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds**, severally, according to their respective interests.

## VI.    COOPERATION

Each and every **Insured** shall give the **Insurer** full cooperation and such information as it may reasonably require relating to the defense and settlement of any **Claim** and the prosecution of any counterclaim, cross-claim or third-party claim, including without limitation the assertion of an **Insured's** indemnification or contribution rights.

## VII.    REPRESENTATIONS AND SEVERABILITY

A.     In granting coverage under this Policy, it is agreed that the **Insurer** has relied upon the statements and representations contained in the **Application**. All such statements and representations shall be deemed to be the basis of this Policy and are to be considered as incorporated into this Policy.

B.     With respect to the statements and representations contained in the **Application**, no knowledge of any **Insured Person** shall be imputed to any other **Insured Person** for the purpose of determining whether coverage is available under this Policy for any **Claim** made against such **Insured Person**. However, the

knowledge possessed by any **Insured Person** who is a past or current Chief Executive Officer, President or Chief Financial Officer of the **Company** shall be imputed to the **Company** for the purpose of determining whether coverage is available under this Policy for any **Claim** made against the **Company**.



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

DJB Holdings LLC
_____
                          Plaintiff

vs.                                        Case Number    2017 CA 001510 B

Darwin National Assurance Co.
_____
                          Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Richard D. Milone
_____
Name of Plaintiff's Attorney

51 Louisiana Ave. NW                    By _____
Address                                                        Deputy Clerk
Washington, DC 20001

202-879-7645                            Date   03/13/2017
Telephone

如需翻译, 请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화하십시오        የአማርኛ ትርጉም ከፈለጉ (202) 879-4828 ይደውሉ

_Clerk of the Court_

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

FORM SUMMONS - Jan. 2011                                                                                        CASUM.doc





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Teléfono: (202) 879-1133

DJB Holdings LLC
_____
                         Demandante

contra

Darwin National Assurance Co.          Número de Caso: _____
_____
                         Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) dias contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) dias contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

Richard O. Milone          *SECRETARIO DEL TRIBUNAL*
_____
Nombre del abogado del Demandante

51 Louisiana Ave, NW
_____     Por: _____
Dirección                                            Subsecretario
Washington, DC 20001
_____
202 - 879 - 7645               Fecha _____
_____
Teléfono

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bản dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시오      የአማርኛ ትርጉም ለማግኘት፣ (202) 879-4828 ይደውሉ።

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA.   SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO.  SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CASUM.doc

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

DJB Holdings LLC

VS

Darwin National Assurance Co.

Case Number: **2017 CA 001510 B**

Date: **03/07/2017**

☐ One of the defendants is being sued
in their official capacity.

| Name: *(Please Print)* | Relationship to Lawsuit |
|---|---|
| Richard D. Milone | ☒ Attorney for Plaintiff |
| Firm Name: Jones Day | ☐ Self (Pro Se) |
| Telephone No.: 202-879-7645   Six digit Unified Bar No.: 440834 | ☐ Other: _____ |

TYPE OF CASE: ☐ Non-Jury       ☐ 6 Person Jury       ☒ 12 Person Jury

Demand: $ **1,000,000 + attorneys' fees**      Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: _____    Judge: _____    Calendar #: _____

Case No.: _____    Judge: _____    Calendar#: _____

---

**NATURE OF SUIT:**     *(Check One Box Only)*

**A. CONTRACTS**                          **COLLECTION CASES**

☒ 01 Breach of Contract         ☐ 14 Under $25,000 Pltf. Grants Consent   ☐ 16 Under $25,000 Consent Denied
☐ 02 Breach of Warranty         ☐ 17 OVER $25,000 Pltf. Grants Consent    ☐ 18 OVER $25,000 Consent Denied
☐ 06 Negotiable Instrument      ☐ 27 Insurance/Subrogation               ☐ 26 Insurance/Subrogation
☐ 07 Personal Property                Over $25,000 Pltf. Grants Consent        Over $25,000 Consent Denied
☐ 13 Employment Discrimination  ☐ 07 Insurance/Subrogation               ☐ 34 Insurance/Subrogation
☐ 15 Special Education Fees           Under $25,000 Pltf. Grants Consent       Under $25,000 Consent Denied
                                ☐ 28 Motion to Confirm Arbitration
                                      Award (Collection Cases Only)

---

**B. PROPERTY TORTS**

☐ 01 Automobile                 ☐ 03 Destruction of Private Property      ☐ 05 Trespass
☐ 02 Conversion                 ☐ 04 Property Damage
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

---

**C. PERSONAL TORTS**

☐ 01 Abuse of Process           ☐ 10 Invasion of Privacy                 ☐ 17 Personal Injury- (Not Automobile,
☐ 02 Alienation of Affection    ☐ 11 Libel and Slander                        Not Malpractice)
☐ 03 Assault and Battery        ☐ 12 Malicious Interference              ☐ 18 Wrongful Death (Not Malpractice)
☐ 04 Automobile- Personal Injury ☐ 13 Malicious Prosecution             ☐ 19 Wrongful Eviction
☐ 05 Deceit (Misrepresentation) ☐ 14 Malpractice Legal                  ☐ 20 Friendly Suit
☐ 06 False Accusation           ☐ 15 Malpractice Medical (Including Wrongful Death) ☐ 21 Asbestos
☐ 07 False Arrest               ☐ 16 Negligence- (Not Automobile,       ☐ 22 Toxic/Mass Torts
☐ 08 Fraud                            Not Malpractice)                  ☐ 23 Tobacco
                                                                        ☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE        IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
    (DC Code § 11-941)
- ☐ 10 Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
    (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability
- ☐ 24 Application to Confirm, Modify,
    Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

**II.**

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
    Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
    Judgment [ D.C. Code §
    2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
    42-3301, et seq.)

- ☐ 21 Petition for Subpoena
    [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
    (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

**D. REAL PROPERTY**

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

_____
Attorney's Signature

03/07 / 2017
_____
Date

CV-496/ June 2015



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

DJB HOLDINGS LLC
    Vs.                                              C.A. No.      2017 CA 001510 B
DARWIN NATIONAL ASSURANCE COMPANY

## INITIAL ORDER AND ADDENDUM

      Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

      (1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

      (2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

      (3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

      (4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

      (5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

      (6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

                                            Chief Judge Robert E. Morin

Case Assigned to: Judge NEAL E KRAVITZ
Date:  March 9, 2017
Initial Conference: 9:00 am, Friday, June 09, 2017
Location:   Courtroom 100
                500 Indiana Avenue N.W.
                WASHINGTON, DC  20001                            Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement.  The early mediation schedule shall be included in the Scheduling Order following the ISSC.  Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator.  Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/.  To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC.  Two separate Early Mediation Forms are available.  Both forms may be obtained at www.dccourts.gov/medmalmediation.  One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator.  Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W.  Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov.  *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles.  All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a).  If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case.  D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826.  Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office.  The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief   Judge   Robert   E.   Morin

Caio.doc

Form CA 1-A: Notice and Acknowledgment for Service by Mail



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

DJB Holdings LLC
_____
*Plaintiff(s)*

v.

Darwin National Assurance Co.
_____
*Defendant(s)*

Case No: 2017 CA 001510 B

## NOTICE

To (insert name and address of the party to be served):
Jonathan A. Constine
Troutman Sanders LLP
401 9th St NW, Suite 1000
Washington, DC 20004

The enclosed summons, complaint and initial order are served pursuant to Rule 4(c)(4) of the Superior Court Rules of Civil Procedure.

You must sign and date the Acknowledgement (below). If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, you must indicate next to your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate next to your signature your authority.

If you do not complete and return the form to the sender within twenty (20) days after it has been mailed, you (or the other party on whose behalf you are being served) may be required to pay any expenses incurred in serving a summons, complaint and initial order in any other manner permitted by law.

If you do complete and return this form, you (or the other party on whose behalf you are being served) must answer the complaint within twenty (20) days after you have signed, dated and returned the form. If you fail to do so, judgment by default may be entered against you for the relief demanded in the complaint.

This Notice and Acknowledgment of Receipt of Summons, Complaint and Initial Order was mailed on (insert date): 03/28/2017.

_____
*Signature*

03/28/2017
_____
*Date of Signature*

## ACKNOWLEDGMENT OF RECEIPT OF SUMMONS, COMPLAINT, AND INITIAL ORDER

I (print name) Jonathan A. Constine received a copy of the summons, complaint and initial order in the above captioned matter at (insert address): Troutman Sanders LLP
401 9th St. NW
Washington, DC 20004

_____
*Signature*

Attorney/Authorized by   3/30/2017
*Relationship to Defendant/Authority   Date of Signature*
*to Receive Service*   Client

Para pedir una traducción, llame al (202) 879-4828

如需翻译,请打电话 (202) 879-4828

Veuillez appeler au (202) 879-4828 pour une traduction

Để có một bài dịch, hãy gọi (202) 879-4828

ፕላማይ ታ ተርገም ለመጠየቅ ስልክ (202) 879-4828 ይደውሉ

번역을 원하시면, (202) 879-4828 로 전화주십시요